# JULIA McDERMOTT v. MINNEAPOLIS, NORTHFIELD & SOUTHERN RAILWAY COMPANY.[1]

December 30, 1938.

No. 31,849.

*Bundlie, Kelley & Finley* and *Joseph A. Maun,* for appellant.
*Grant L. Martin* and *Charles F. Noonan,* for respondent.

STONE, JUSTICE.

Action for wrongful death resulting below in a verdict instructed for defendant. From the order denying her motion for a new trial, plaintiff appeals.

[1]Reported in 283 N. W. 116.

Decedent, John B. McDermott, then in his 56th year, met death about one o'clock a. m. of March 3, 1937, in the course of his employment by defendant. His status was that of freight conductor, in charge of a switching crew in defendant's Minneapolis yards. Track five is a spur running alongside the north platform of defendant's freight depot. Its "dead end" is just short of the east end of the platform. The latter is eight feet wide, with a slight slope downward and outward from the depot. The clearance between outer edge of platform and near side of the three freight cars being handled by McDermott's crew was from three feet one quarter inch to three feet four and eleven-sixteenths inches. At its outer edge the top of the platform was approximately four feet above ground level.

At the time there was an accumulation mostly of snow, with some ice and other debris, which, during the winter, had been swept from the platform into the space between it and the nearer rail of track five. In cross section it was roughly triangular. At places its inner or high side was within a foot of the floor of the platform. Thence, with much unevenness, it sloped outward and toward the inner rail. Next to that rail it had become high enough so that the journals, or axle housings of freight cars, had made their own clearance through the drift. For a time the weather had indulged in alternate freezing and thawing. At ten p. m. that evening the temperature in Minneapolis was 32 degrees above zero; from midnight to one a. m., 30 degrees; and at two a. m., 29 degrees. The jury could well have found that the pile of snow and ice had become well compacted and its surface hard and slippery.

McDermott's crew was engaged in moving out from track five a string of three boxcars. The switch engine was headed in and coupled to the outer or west end of the string, so that the next movement was to "back up." McDermott, when last seen, was on the platform with his electric lantern. It was too dark for members of the crew to see each other at any great distance. While on the platform, and not far from its outer edge, he gave the "back up" signal, which was seen by brakeman Bostwick, who repeated it for the engineer. Bostwick was nearer the locomotive

and about a car length from McDermott. He saw the latter start to "walk toward the car," one of the string of three about to be moved. Probably all Bostwick saw with certainty was a movement of McDermott's lantern. Next and immediately he saw the light move toward the edge of the platform and then "go in a half-circle and disappear." As to McDermott's being on the platform when last seen, Bostwick is corroborated by engineer Murray. The latter got both signals, the first from a man "on the platform," who must have been McDermott, and the second from a man "on the ground," who was Bostwick.

Upon seeing McDermott's light disappear, Bostwick promptly signaled for an emergency stop and got it. He found McDermott's body, life extinct, lying a short distance outside the rail next the platform. His head had been crushed, but the body was not otherwise mutilated. It was between platform and rail, the head close to the latter. There was no mark on the snow to indicate that he had fallen or slipped thereon. A blood stain was found on the inside rail, and there was another which extended about 18 inches on the snow, toward the platform. No such stains were on the platform, or between the rails, or on the wheels, or any other part of the car.

Verdict was directed for defendant on the ground, and none other, that as to the vital link of causal connection between defendant's negligence and McDermott's injury the case was left in the dubious area of conjecture. In that view we cannot concur, for the reasons hereinafter stated.

First may be mentioned the issue whether the case arises from a happening in interstate, or from one in intrastate, commerce. With that question present consideration is not concerned. Decision of the problem of sufficiency of evidence to show proximate cause will be the same whether the case arises under the federal (45 USCA, §§ 51-59) or the state (1 Mason Minn. St. 1927, § 4719, et seq.) railroad liability act.

Another premise, no matter of present decision, but rather of familiar and unquestioned law, is the rule that defendant is liable if its negligence, although not the sole cause of McDermott's death,

contributed thereto proximately, as a substantial factor of causation. It is but a corollary of that proposition that plaintiff was under no necessity of negativing other possible contributing causes.

■ There cannot be serious question that the hardened and treacherous pile of ice and snow between platform and track reasonably could have been found by a jury to constitute negligence. 45 USCA, §§ 51-59. The local statute, 1 Mason Minn. St. 1927, § 4758, requires railroads to keep such a space alongside a railroad track free from obstructions by "any foreign obstacle that will interfere with the work" of employes or subject them to "unnecessary hazard." The statute further provides:

"Such space between or beside said tracks * * * and between the rails * * * must be kept in such condition as to permit said employes to pass over or between said tracks or to use the same by day or night and under all weather conditions without unnecessary hazard."

■ The record is such as to present some difficulty in determining either way the decisive question as to the sufficiency of the evidence to permit a real inference or deduction, as distinguished from mere speculation or conjecture, that defendant's negligence caused the accident. But we think there are elements strong enough for the affirmative, so that the triers of the facts could have sustained it by reasonable inference.

McDermott fell. That much is certain. It is equally plain that he must have fallen on the treacherous incline beneath him. It is not piling inference on inference to conclude that thereby he was projected downward toward the then moving wheels of the freight car. That is an inference, put, not upon another inference, but upon the proved fact of the fall.

Suppose that instead of the dangerous pile of snow and ice there had been under McDermott, as he fell, a grating to cover the entrance of a subterranean chamber. Suppose, further, that, because of defendant's negligence, that grating had been so weakened by faulty construction or age and neglect as not to sustain the weight of a man stepping or falling on it. If McDermott, slipping from

the platform or missing the handholds or stirrup on the car, had fallen on such a grating and, because of its condition, through it, to his death, would it not be a reasonable deduction that defendant's negligence contributed proximately to the fatal result? We think so and consider that plaintiff's evidence was sufficient, in quality and quantity, to have sustained a reasonable inference that defendant's negligence proximately contributed to the fatal result.

A finding that McDermott did not fall on the obstruction would be unreasonable. So also one that the icy incline toward the rail did not tend to deflect his body toward the moving wheels. Those circumstances furnish more of the probable, *i. e.,* inferential, and much less of the merely possible, *i. e.,* conjectural, than did the facts of C. M. & St. P. Ry. Co. v. Coogan, 271 U. S. 472, 46 S. Ct. 564, 70 L. ed. 1041, reversing Coogan v. C. M. & St. P. Ry. Co. 160 Minn. 411, 200 N. W. 477. The conclusion that McDermott, having fallen thereon, was by the inclined icy surface beneath him projected against the moving axle housings plainly enough is in the category of reasonable probability rather than speculative possibility, and makes the issue of proximate cause one of fact. By that factor the Coogan case is distinguished from this.

We have here what seems to be more ground for a reasonable affirmative inference on the issue of causation than was presented in Kulp v. C. St. P. M. & O. Ry. Co. (8 Cir.) 88 F. (2d) 466 (*certiorari* denied, 301 U. S. 700, 57 S. Ct. 930, 81 L. ed. 1355). There a defective telltale was the assigned cause of injury to a brakeman, whose dead body was found on a yard track on which his train had moved. There was no eyewitness to his being struck by the telltale or to his fall from the car stop. Yet it was considered that the evidence presented a fact issue as to causation.

Here one factor was shown that might have caused the accident— one without which it probably would not have happened, even though McDermott had fallen. There was in the evidence for plaintiff the material for reasonable deduction of "something more than consistent" with her theory of causation. Under the rule of such cases as Mitton v. Cargill Elev. Co. 124 Minn. 65, 144 N. W. 434 (s. c. 129 Minn. 449, 152 N. W. 753) ; Paine v. Gamble Stores, Inc.

202 Minn. 462, 279 N. W. 257, 116 A. L. R. 407, the issue of proximate cause was for the jury.

■ ▪ On plaintiff's part there has been a violation of our rules so inexcusable as to demand comment. Appropriate quotation from relevant authority is always welcome. Repetition of the same idea by quotation from other authorities is ordinarily futile and not welcome. See Rule VIII(3) (e) [200 Minn. xxx]. The more serious fault with the brief for plaintiff is that it devotes a great many pages of argument, citation, and quotation to the elementary propositions (1) that defendant is liable if its negligence contributed to the accident as a cause thereof; and (2) that it was not incumbent upon plaintiff by her evidence to negative all other possible contributing causes. Labored argument on such familiar propositions of law is neither complimentary nor helpful to the court. But sometimes the habit is so persistent and goes so far that if we did not know them so well and so favorably counsel might almost be suspected of being in league with the printers. For the reason indicated, plaintiff will be denied statutory costs.

The order must be and is reversed.

MR. CHIEF JUSTICE GALLAGHER took no part in the consideration or decision of this case.