LETTIE HILL v. NORTHERN PACIFIC RAILWAY COMPANY.[1]

April 25, 1941.

No. 32,723.

*Hunt, Palmer & Hood,* for appellant.

*L. B. daPonte* and *Frederic D. McCarthy,* for respondent.

[1]Reported in 297 N. W. 627.

JULIUS J. OLSON, JUSTICE.

Action under the federal employers liability act, 45 USCA, § 51, *et seq.*, to recover damages for the death of plaintiff's husband, Eugene Hill, predicated upon the claimed negligence of defendant railway company's servants, and resulting in a verdict for defendant. Plaintiff appealed from an order denying her motion for a new trial.

Decedent, who for a period of 33 years and next prior to the moment of death had been defendant's employe as a brakeman, met his death at about 11 o'clock p. m. while engaged in his duties as such brakeman in switching operations conducted at defendant's Carlton yards. The night was dark but clear; the ground dry. The only lights were those furnished by lanterns carried by the brakemen. (Lack of adequate or proper lights is not in the case.) The switching crew at the time of accident consisted of the engineer, Stevenson; the fireman, Wiehe; the head brakeman, Frerichs; and Mr. Hill, rear brakeman. As the company's liability is predicated and practically depends upon whether Stevenson or Frerichs, individually or collectively, were negligent in their duties in the circumstances, plaintiff made them parties defendant. As such they were called by plaintiff for cross-examination under the statute. Fireman Wiehe, who sat across the cab from the engineer, was not called as a witness for the obvious reason that in that situation he could not see any of the signals given by the brakemen to the engineer which governed the latter's movement of the switch engine. Before plaintiff rested she dismissed the action as to the individual defendants, and the cause proceeded against the railway company only. The alleged acts of negligence upon which liability was sought were (1) failure of the engineer to keep a proper lookout; (2) lack of proper control on his part in respect to the movements of the engine in conformity with the brakemen's lantern signals; and (3) failure on the part of Frerichs adequately to signal Hill's position to the engineer immediately before the happening of the fatal accident. These alleged negligent acts, whether done singly or jointly, if proximately con-

tributing to Hill's death, were made the foundation upon which plaintiff's cause was built. Upon these the case was submitted to the jury.

While the switching operations were going forward, when seven cars attached to the switch engine were being coupled onto another car to be attached to the train then being made up, Hill's light suddenly disappeared. The engineer testified that in such event it became his imperative duty to stop the engine at once. He claims he did just that. The movement of the engine was at a very slow pace, estimated at two to three miles per hour. While so proceeding with their work the engineer received a lantern signal from Hill indicating an "easy" forward movement. In response thereto, the locomotive proceeded until Hill's light suddenly disappeared. Immediately the engineer, so he testified, applied his brakes, but Hill's body was found caught between the car bumpers, *i. e.*, the bumper of the seventh car in the string then being pushed toward the car to be attached. His death was immediate, his chest being caught between the two bumper ends.

There was a rule in force providing that brakemen should "not go between moving cars or engines to couple or uncouple, or to connect or disconnect hose," and that they should "not step in front of moving cars or engines to adjust couplings."

The assignments of error upon which reliance for reversal is based relate (1) to error in reception of testimony, and (2) to errors in the charge. These may be taken up in the order mentioned.

■ During the examination of Mr. Stevenson and before the cause was dismissed as to the individual defendants, he was asked by his counsel:

Q. "Now, Mr. Stevenson, tell this court and jury when Mr. Hill's light disappeared was there anything that you failed to do?

A. "No, I done everything—

Mr. Palmer: "Just a minute. I move this be stricken. Object to it as incompetent, irrelevant, immaterial, calling for a conclusion of the witness.

The Court: "Overruled. You may answer.

Mr. Palmer: "Exception.

A. "No, I done everything I could do to stop those cars and engine. * * *

Q. "Now, tell this court and jury, Mr. Stevenson, whether you failed to close the throttle and set the air when you saw the light disappear, whether you failed to do that promptly or whether you did it quickly or what you did?

A. "When his light disappeared I figured I should stop and I closed the throttle and grabbed the brake valve, moved the brake valve and stopped.

Mr. McCarthy: "That is all.

A. "I couldn't do it any different than I done. If I was to do it again I would do it the same.

Mr. Palmer: "I move this be stricken—

Mr. McCarthy: "That is all.

The Court: "Motion denied.

Mr. Palmer: "—as a conclusion."

Mr. Palmer then proceeded with his examination of the engineer in this fashion:

Q. "In other words, Mr. Stevenson, you say when this light disappeared it called for an emergency stop?

A. "Yes."

The witness then added:

A. "That is a stop signal to get the train stopped, the disappearance of the light.

Q. "It is your testimony that you moved your hand just as fast as you could to make that stop?

A. "Yes. I closed the throttle and moved down and made my brakes.

Q. "Just as fast as you could?

A. "Yes."

It is well to note that counsel for plaintiff had, prior thereto, by his examination of Mr. Stevenson, qualified him as a man of long experience and well versed in his duties as an engineer, in fact had made him an expert. In that situation, it would seem that the testimony was admissible. But, for the sake of argument, let us assume that he was not an expert, yet the fact remains that no possible harm could have come to plaintiff in view of the testimony elicited without objection and to which plaintiff lent substantial aid, as has been quoted. If the portions sought to be stricken had been eliminated, the answers later elicited without objection and the questions put by Mr. Palmer and answered by the witness clearly sustain what Mr. Stevenson previously had said. We cannot see that there was reversible error here.

■ Twenty assignments of error have been made in respect of the court's instructions. After a careful reading thereof we have come to the conclusion that instead of being faulty they are in fact a fair and just exposition of the issues presented and the rules of law applicable thereto. Viewing plaintiff's case in its most favorable light, the most that can be said for her is that she made a very doubtful *prima facie* case. Then, too, the court submitted the issues to the jury upon plaintiff's own theory of negligent conduct on defendant's part.

Certainly it was not error to refuse a request on the subject of assumption of risk since that was not before the jury at all, nor in the case. If injected into the charge it might well have been assigned as error since it would have brought to the minds of the jurors a fake issue, a matter foreign to any element in the case.

Nor do we find anything even resembling argumentative instructions nor any remark made by the court casting doubt or reflection on plaintiff's claims.

The court took commendable pains to draw the proper line of distinction between the question of liability and that of damages.

In its memorandum it lucidly states its reason for so doing by saying that the language chosen "was used designedly * * * to impress on the jury that the question of liability is entirely distinct from the question of damages and to minimize the likelihood of compromising liability and damages."

Another error urged is that the court's instruction in regard to circumstantial evidence was faulty, the italicized portion of the quotation below being the part to which objection is made. This is what the court said:

"Any fact which is in issue, that is, which is in dispute between the parties, and which either side has the burden of proving, such as negligence, or proximate cause, or contributory negligence, may be proved by circumstantial evidence as well as by direct evidence. Circumstantial evidence is sufficient if it furnishes a reasonable basis for you to infer that the fact is as claimed by the party who has the burden of proving it. *Circumstantial evidence is not sufficient if it is merely consistent with the claim which the party makes and is also consistent with some other theory.* That is not enough. However, you cannot base a verdict on mere speculation and conjecture as to what may have happened at the time in question. You cannot assume the existence of some fact which is not proved by either direct or circumstantial evidence and then base a verdict on such assumption." (Italics supplied.)

Consideration of the segregated portion apart from the context as a whole might furnish some basis for criticism of it. But by reading the entire paragraph one finds difficulty in discovering error. Nor do we find anything inconsistent or contradictory in this instruction.

As said in Curran v. C. G. W. R. Co. 134 Minn. 392, 396, 159 N. W. 955, 957: "A charge is to be construed from the practical standpoint of the jury." And again in Roach v. Roth, 156 Minn. 107, 110-111, 194 N. W. 322, 324: "We view a charge, however, in a practical way, and to some extent from the standpoint of a juror's understanding of it, for the jury applies it. We have had

occasion to remark before that the language of an opinion or text, though accurate, may not be appropriate in a charge to the jury." (Citing cases.)

So viewing the challenged instructions, we find no difficulty in holding that plaintiff has no just ground for complaint.

Order affirmed.