## MARGUERITE KACHEL AND ANOTHER
## v. RAY BENDISKE.

88 N. W. (2d) 91.

February 14, 1958—No. 37,251.

*Joseph M. Finley, Richard J. Leonard,* and *Doherty, Rumble & Butler,* for appellants.

*Thomas J. Battis* and *Murnane & Murnane,* for respondent.

KNUTSON, JUSTICE.

This is an appeal from an order denying plaintiffs' motion for a new trial.

The case arises out of an intersection collision between automobiles owned and driven respectively by plaintiff Roy Kachel and defendant, Ray Bendiske. For the purpose of disposing of the question submitted here, the facts may be summarized briefly as follows:

Trunk Highway No. 100 is a double highway consisting of a double lane, 24 feet in width, used by westbound traffic and a similar double lane used by eastbound traffic, separated by a grassy area about 30 feet in width variously described as an island, boulevard, or ditch. Lexington Avenue runs north and south and is roughly 20 feet wide. It intersects Highway No. 100 in Dakota County at right angles. Both highways are tarvia surfaced, and both were dry at the time of the accident. The approach to Highway No. 100 from Lexington Avenue is controlled by a stop sign.

On January 13, 1956, defendant was driving in a westerly direction on the north half of the lane used for westbound traffic on Highway No. 100 at a speed of 45 to 50 miles per hour. The speed on Highway No. 100 is limited to 50 miles per hour at or near the place of the collision. At the same time, Roy Kachel was driving south on Lexington Avenue, accompanied by his wife, at a speed of 25 to 30 miles per hour.

To the east of Lexington Avenue, Highway No. 100 rises slightly, and there is a crest of a hill variously estimated by the witnesses to be from 200 to 800 feet east of Lexington Avenue. When an automobile is east of the crest of this hill, the driver cannot see an automobile approaching Highway No. 100 on Lexington Avenue from the north. Defendant testified that, as he cleared the crest of the hill, he saw the lights of plaintiffs' car approaching Highway No. 100 on Lexington Avenue and that it then was about 50 feet north of the intersection and was slowing down. Defendant did not know whether plaintiffs made a full stop or not.

Kachel and his wife both testified that he stopped a little beyond the stop sign and let a westbound car go by on Highway No. 100. Kachel testified that he then looked to the east and observed faint lights coming over the crest of the hill, which he estimated was some 1,000 feet away. He then started to cross the intersection and remembers no more until after the accident.

The two cars collided on the south half of the double lane used for westbound traffic in such a way that negligence, contributory negligence, and proximate cause are all clearly questions for the jury, and it would serve no useful purpose to set forth in more detail the evidence as to how the collision occurred. Plaintiffs do not question the submission of these questions to the jury. Neither do plaintiffs contend that there was anything wrong with the court's instructions on applicable law. They contend that the court, by a repetition of the duties owing by plaintiffs in approaching and entering an intersection protected by a stop sign, so far overemphasized plaintiffs' duties as compared with those of defendant that the jury was misled into returning a verdict for defendant. The only question presented for our determination is whether the court, by a repetition of certain instructions, prevented plaintiffs from having a fair trial.

Apparently it is plaintiffs' contention that each time a trial court mentions the duties of one party to litigation it must mention the correlative duties of other parties and that they must be mentioned substantially the same number of times or it follows that the party who has been mentioned the least number of times has suffered prejudice. Of course, that is not true. The trial court in this case correctly instructed the jury that Kachel, in approaching Highway No. 100, was under a duty to stop at the entrance to the highway and that, having stopped and yielded the right-of-way to approaching traffic constituting an immediate hazard, he could proceed and that thereupon the driver of an automobile approaching on Highway No. 100, that is Bendiske, would be under a duty to yield the right-of-way to the vehicle so proceeding. The court then instructed the jury as to the forfeiture of right-of-way of an automobile driving at an unlawful speed. Up to that point, apparently there is no complaint with the instructions. The court then said:

"* * * Now, I will again read *as applicable to both drivers,* so that you may more readily understand it and apply it, the law pertaining to through highways: * * *." (Italics supplied.)

The court then proceeded to again instruct with respect to the duty of an automobile approaching a through highway to stop and yield

the right-of-way and then said:

"* * * but the driver having so yielded may proceed, and the drivers of all other vehicles approaching the intersection on the through highway shall yield the right of way to the vehicles so proceeding into or across the through highway."

It would seem that up to that point there should be no complaint, for the court had then mentioned the duties of both parties an even number of times. The court thereupon explained the law as to stop signs generally—as to where a motorist must stop with respect to the sign and the rights of approaching motorists to assume that one approaching a highway protected by a sign will heed the sign and stop until it is apparent that he is not going to stop. Thereafter the court concluded its instructions on this phase of the case as follows:

"* * * It is for you to determine who violated the highway traffic regulation act and, if violated, whether or not such violation was negligence, and, if negligence, whether or not such violation was a proximate cause of the collision. It is for you to determine which driver used or exercised reasonable care under all the facts and circumstances existing in this case."

While there is some repetition which theoretically might not have been essential, we fail to see how plaintiffs were treated unfairly by these instructions. It seems to us that the court clearly pointed out to the jury the correlative duties of the parties and left it to the jury to decide who was negligent. No exceptions were taken to the charge, and the only dissatisfaction voiced by plaintiffs' counsel occurred after the jury had retired when he said:

"Mr. Leonard: With all due respect and humility, I feel that the instruction with reference to yielding the right of way overemphasized the situation, particularly in respect of stopping. I know it was an effort to make the matter clear, but I don't know of anything to correct it at this time.

"The Court: Neither do I.

"Mr. Battis: I think it was all right.

"Mr. Leonard: I just thought it overemphasized the principle of stopping.

"The Court: I didn't have that feeling or I wouldn't have given the instruction."

Nothing more was said or done. We think that a fair reading of the instructions as a whole can hardly lead to a conclusion that the jury was misled by the court in any way.

Plaintiffs rely for the most part in Zurko v. Gilquist, 241 Minn. 1, 62 N. W. (2d) 351. The facts in that case are so distinguishable from those now before us that it seems useless to point out the differences. In that case, a portion of an applicable statute was omitted at a point in the court's instructions which would be apt to lead the jury to believe that the rights of the parties were governed solely by the portion given. The decision is not based upon the fact that correct instructions were stated more than once or that the instructions over-emphasized the duties of one party as contrasted to those of the other. While cases might arise where a repetition and overemphasis of the duties of one party as contrasted to those of the other could mislead the jury, this is not one of them. We find no reversible error.

Affirmed.