Frank **ALTRICHTER**, Plaintiff,

v.

**SHELL OIL COMPANY**, Defendant.

Civ. No. 1891.

United States District Court
D. Minnesota,
Fifth Division.

April 9, 1958.

Bradford & Kennedy, Charles W. Kennedy, Wadena, Minn., for plaintiff.

Reavill, Jenswold, Neimeyer & Johnson, Joseph B. Johnson, Duluth, Minn., for defendant.

DONOVAN, District Judge.

Diversity of citizenship and the amount of damages sued for make this a federal case. The matter is now before

the Court on motion by plaintiff for a new trial.

The case was previously tried to court and jury at the May 1957 Term and plaintiff had a verdict for $27,500. A new trial was granted by the first court, who among other things in his memorandum order said:

"I conclude that the verdict is contrary to the clear weight of the evidence and must be set aside."

The case was ably tried by counsel who were post graduates of the first trial of 510 pages of transcript.

The jury at the second trial returned a verdict for defendant on January 20, 1958. Preparatory to the second trial the Court in the instant case presided at a pre-trial conference. All problems having to do with the case were discussed. Trial briefs were thoughtfully provided by counsel. Theory of trial, issues, facts and law were reviewed as customary in chambers. After resting at the second trial the evidence and law were again considered. Requests to charge, and the Court's general charge, were reviewed.

By briefs and oral argument counsel earnestly urges twenty-six assignments of error, which are summarized by counsel in these words:

"Plaintiff contends that the charge misled the jury, that the verdict is contrary to the evidence, and that the interests of justice require a new trial."

A helpful understanding of plaintiff's criticism of charge and verdict may be arrived at by a statement of the facts and issues which as developed in the case at bar are almost identical to those in the first trial.

On September 26, 1956, plaintiff was employed by a road contractor as a laborer in connection with repairs to a Minnesota highway. The employer is not a party to the instant case. During the course and scope of his employment plaintiff met with an accident causing personal injury and disability. His work required him to operate a melter, used to reduce asphalt to a fluid state for pouring in cracks developed in the hard-sur-faced highway at or near Benson, Minnesota. To aid in this process the employer designed and built a double boiler type of contraption 50½ inches wide, 65 inches long and 4 feet high, mounted on a semi-trailer. The asphalt would be placed in one boiler and transfer oil (herein termed Valvata 85) in the second boiler and heat (by means of propane burners in a flue) would be applied.

The particular melter here involved, prior to its preparation for use on the day in question, had been idle, and stored in the employer's yard with vents covered, but otherwise exposed to outside atmospheric conditions, for about eleven months. That is, from October, 1955, when it was drained for storage, to September 24, 1956, when it was taken to Benson, Minnesota, the melter was out of service. On September 24, 1956, plaintiff checked the melter and tried it out for use. This consisted of pouring the required amount of Valvata 85 from original containers into the melter. Then the propane burners were turned on to heat the Valvata 85 at about 40 degrees per hour. When heated to about 150 degrees, a small leak was observed in the rear of the melter. The process of heating was thereupon discontinued, the Valvata 85 was removed from the melter and it was repaired by welding the defective part. When repairs had been completed, the Valvata 85 was restored to the melter and reheated to 300 degrees, on September 25, 1956, and then heating was discontinued until the next day. The melter was then again placed in operation on September 26, 1956.

Plaintiff's evidence was to the effect that a solvent, phenol and cresol, was mixed with the crude oil in the manufacturing process of Valvata 85. That the boiling point of water is 212 degrees F.; the boiling point of phenol is 361 degrees F.; the boiling point of cresol is 396 degrees F. On the day previous to the accident, the employer's man Fischer last observed the temperature to be about 400 degrees. There was no gurgling such as might accompany a boiling fluid, and

when Fischer was about fifty feet from the melter, the explosion or expelling of the hot oil occurred. The clothes of plaintiff were saturated with the oil as he was standing with his back to the melter and about 30 feet distant therefrom.

There is no dispute but that Valvata 85 had been used in the melters for several years prior to the accident and that nothing untoward in the way of the accident here had ever occurred before. On occasions when water found its way into the melter its presence was observed at 250 degrees Fahrenheit or less because of the boiling point of water. The employer and his employees had no advance knowledge of the happening of the accident or the cause thereof.

The theory of plaintiff at trial was that defendant furnished the transfer oil which was represented as capable of withstanding temperatures of up to 600° Fahrenheit, but which, as used at the time and place in question, exploded at 440°. That in furnishing the oil for the purpose for which it was intended and used, defendant was negligent in failing to warn the users of the oil of the dangers attendant upon subjecting it to the temperatures attained, and in failing to so process or manufacture the oil so as to permit it safely to absorb temperatures up to 600° when placed in the melter and subjected to the customary heat.

Plaintiff contends that during five years of use of Valvata 85, heated to 600° in the same or comparable melters, there had never been an explosion or gushing of oil, as in the instant case; hence there must have been some inherent and dangerous substance in the oil used on the day in question unknown to plaintiff and his employer, which could not be discovered by a reasonable inspection, and which was the negligent and proximate cause of the accident.[1]

Defendant contends the Valvata 85, as manufactured and marketed by it and used by plaintiff's employer at the time in question, was free from any deleterious substance or defect that would in any manner cause the accident and resulting injury to the plaintiff. Defendant further contends that the occurrence of the accident was not due to negligence of defendant. Defendant claims that plaintiff's injuries and disability arose out of and were solely caused by the negligence of plaintiff's employer in permitting moisture and water to accumulate in the melter while in said employer's possession and control, and while exposed to atmospheric conditions over a period of some eleven months immediately prior to its use and the discharge of hot oil on the person of plaintiff. In other words, as between the plaintiff's theory of negligence as the cause, and defendant's theory of freedom from negligence, the jury necessarily was dependent on conjecture in arriving at the proximate cause of the accident, and, under such circumstances, a jury may not be permitted to guess as between two clearly persuasive theories consistent with the evidence adduced in the matter of connection of proximate cause with the accident.[2]

1. Plaintiff cites in support of his contentions the following:

MacIntosh v. Great Northern Ry. Co., 151 Minn. 527, 188 N.W. 551; McDermott v. Minneapolis, Northfield & So. Ry. Co., 204 Minn. 215, 283 N.W. 116; Kollodge v. F. and L. Appliances, Inc., 248 Minn. 357, 80 N.W.2d 62; Rase v. Minneapolis, St. P. & S. S. M. Ry. Co., 107 Minn. 260, 120 N.W. 360, 21 L.R.A.,N.S., 138.

2. Defendant cites:

Alling v. Northwestern Bell Telephone Co., 156 Minn. 60, 194 N.W. 313; Honer

v. Nicholson, 198 Minn. 55, 268 N.W. 852; Smock v. Mankato Elks Club, 203 Minn. 265, 280 N.W. 851.

See also:

Krtinich v. Duluth, Missabe & Iron Range Ry. Co., 206 Minn. 106, 287 N.W. 870; Chicago, Rock Island & Pacific Railroad Co. v. Emery, 8 Cir., 233 F.2d 848.

As said in the Rase case, supra [107 Mich. 260, 120 N.W. 362]:

"[Proximate cause] *must be established by a preponderance of the evidence* * * *."

### 1. Is the verdict and judgment contrary to the evidence?

■ Plaintiff argues it is, and in so doing challenges the weight and sufficiency of the evidence. This challenge requires that the evidence must be viewed in a light most favorable to the prevailing party. The jury, having found in favor of the defendant, the Court must accept as true all facts which the evidence reasonably tended to prove. Defendant is entitled to all favorable inferences which may reasonably be drawn from the evidence and circumstances proved. It must be assumed that the jury resolved all conflicts in favor of defendant.[3]

■ In this diversity case the substantive law of Minnesota controls.[4]

■ As between oil, water or other agencies, which caused the accident? It should be observed that plaintiff's theory of cause required the presence of water and solvent in combination at the top of the melter. Also, the possibility of the presence of a causative agency in the oil was once weakened by the pouring of defendant's sealed product in the melter the day before the accident, and finding the melter defective by leaking, the oil was then removed, replaced in the original containers, and following necessary repairs, the oil was again poured back into the melter, heat applied to 440° Fahrenheit and then the accident occurred. Thus conjecture and speculation are enhanced and play an important part in the unfortunate drama of September 26, 1956. Plaintiff contends the oil was harmful. Defendant contends the oil was safe for the purpose used. The situation is reduced to an expulsion of hot oil injuring plaintiff. A prima facie case against defendant, plaintiff contends. But the showing of the attendant circumstances of water or moisture, or fluids other than oil in the melter following exposure to climatic conditions for months and the necessity for repairs the day before the accident, may well have destroyed the essence of plaintiff's evidence.[5] Expert testimony is intended to assist the jury in arriving at a correct conclusion, not to substitute the opinion of the expert for that of the jury. Perhaps plaintiff relied too much on that type of evidence.

■ In my opinion the evidence supports the verdict returned by the jury.

### 2. Is the verdict contrary to law?

The remaining assignments of error will be discussed and disposed of under this heading. Plaintiff's twenty-six assigned errors may be reduced to his counsel's clear analysis of the two trials which, as quoted from oral argument, is this:

"* * * in the second trial we proved everything we did at the first trial, and more. * * * In the first trial we didn't assign a cause other than the oil. * * * So as the case came before the jury * * * it was either the oil or it was the water. It is because the issue was that simple that we feel * * * the * * * impact of the charge * * * was to present * * * a more formidable burden of proof than actually rested on the plaintiff."

■■ Plaintiff submitted eleven requests to charge, and the defendant sub-

Conjecture and speculation are not enough to prove cause.

Orth v. St. Paul, Mpls. & Manitoba Ry. Co., 47 Minn. 384, 389, 50 N.W. 363, 365.

3. Railway Express Agency, Inc., v. Mackay, 8 Cir., 181 F.2d 257, 259, 19 A.L.R. 2d 1248; Mounds Park Hospital v. Von Eye, 8 Cir., 245 F.2d 756, 759; Dahling v. Dammann, Minn., 87 N.W.2d 25, 30;

Lyon v. Dr. Scholl's Foot Comfort Shops, Minn., 87 N.W.2d 651, 654.

4. Erie v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188; Chicago, Great Western Railway Co. v. Robinson, 8 Cir., 243 F.2d 389, 391.

5. Heffter v. Northern States Power Co., 173 Minn. 215, 217, 217 N.W. 102; Watkins Co. v. Raymond, 8 Cir., 184 F. 2d 925, 929.

mitted twelve such requests. Amplification of the Court's general charge through the giving of some of the requests leads plaintiff to complain of over-emphasis.[6] Viewed as a whole, there is no error in the Court's charge, as given. Piece-meal, separating, picking, choosing and segregating in the manner plaintiff attempts to picture the instruction, is not the charge the jury received. The instructions must be read in their entirety and not taken out of context to be used as a basis for a new trial. The instructions must be considered from a practical and commonsense point of view.[7] Examination of the complete instructions to the jury, rather than the disjointed and fragmentary selections as made by plaintiff, is convincing that the jury was not misled by the Court's statements of the issues or reference to the controlling law having to do with burden of proof and proximate cause. The instructions as given clearly and fairly presented the law applicable to the facts.[8]

If there appears to be a tendency to over-emphasis, it must be allocated to the time-consuming practice of presenting arguendo many requests that counsel know are covered by the Court's general charge. Here it may be well to note the approved practice to deny all such requests when the trial court realizes the general charge is adequate and covers all issues at trial. Perhaps this would have better served in the instant case. However that may be, amplification rests largely in the discretion of the trial court. The court has a broad discretion in the emphasis it may direct to any legal position, or whether having spoken on the subject it need or need not repeat the proposition in varying ways, as proposed by respective counsel, as long as the court clearly tries to present each of the parties' legal theories to the jury.[9]

It is elementary that the trial court is allowed considerable latitude in the language used in instructing the jury. All that is required is that the charge as a whole conveys to the jury a clear and correct understanding of the law. Every imaginable misapprehension need not be guarded against. The important thing is to fairly state the law applicable to the case. A motion for a new trial should, under circumstances most favorable to movant, be considered cautiously, and if and when granted it should only be in furtherance of substantial justice.[10] Counsel were apprised of the Court's rulings and the contents of the Court's proposed charge

---

6. A review of the claimed errors discloses nothing more than "a magnification of details." See Newton v. Minneapolis Street Ry. Co., 186 Minn. 439, 452, 243 N.W. 684, 689.

7. Erickson v. Northern Minnesota National Bank of Duluth, 235 Minn. 232, 50 N.W.2d 489; Netzer v. Northern Pacific Rwy. Co., 238 Minn. 416, 57 N.W.2d 247; Leman v. Standard Oil Co. of Indiana, 246 Minn. 271, 74 N.W.2d 513; Sonntag v. Adkinson, Minn., 87 N.W.2d 845.

8. Cameron v. Evans, 241 Minn. 200, 208, 62 N.W.2d 793; Hill v. Northern Pacific Ry. Co., 210 Minn. 190, 297 N.W. 627; Lund v. Minneapolis Street Ry. Co., 250 Minn. 550, 86 N.W.2d 78; Nathan v. St. Paul Mut. Ins. Co., Minn., 86 N.W.2d 503, 512, 513; Sonntag v. Adkinson, supra; Kachel v. Bendiske, Minn., 88 N.W.2d 91, 94.

9. Chicago, Rock Island & Pacific Ry. Co. v. Emery, supra; Lincoln City Lines, Inc., v. Schmidt, 8 Cir., 245 F.2d 600; Wood v. Gas Service Co., 8 Cir., 245 F.2d 653; Flintkote Co. v. Lysfjord, 9 Cir., 246 F.2d 368, 389.

10. Stofer v. Montgomery Ward & Co., 8 Cir., 249 F.2d 285, 288; Cameron v. Evans, supra; Newton v. Mpls. Street Ry. Co., supra; Leuba v. Bailey, Minn., 88 N.W.2d 73, 83; Hill v. Northern Pacific Ry. Co., supra [210 Minn. 190, 297 N.W. 627], where the Minnesota court says at page 629:
"Twenty assignments of error have been made in respect of the court's instructions. After a careful reading thereof we have come to the conclusion that instead of being faulty they are in fact a fair and just exposition of the issues presented and the rules of law applicable thereto."

to the jury before counsel argued to the jury. Following the giving of the charge, the Court concluded as customary, saying:

"Counsel may call to my attention any errors of law or any errors in summary to the jury by way of misstatements of facts or errors in the Court's charge."

 The pleadings, theory of trial and the evidence at the first and second trials are identical, with minor exceptions. Counsel need not relinquish his right for review of the basis for the first verdict, and possible reinstatement.[11]

 From the standpoint of the present posture of the instant case, I am satisfied plaintiff had a fair trial. In retrospect the present case differs little from that disclosed in the official transcript of the first trial. Plaintiff and defendant may have broadened their expert testimony. Otherwise there is little difference in the evidence of the two trials. Insufficiency of the evidence to support the verdict warrants judgment notwithstanding the verdict. Suffice to say, the present Court must be guided entirely by the record of the instant case and leave disposition of the case with the thought that

"Every conscientious judge * * rejoices in the thought * * * that his decision may be reviewed, and that, if erroneous, it will not work irreparable injustice to him whom he deems it his duty to defeat."[12]

The plaintiff's motion is denied.

It is so ordered.

Plaintiff is allowed an exception.

11. American Mfrs. Mut. Ins. Co. v. Wilson-Keith & Co., 8 Cir., 247 F.2d 249; Standard Oil Co. v. Brown, 5 Cir., 238 F.2d 54, 56.

12. Boatmen's Bank of St. Louis v. Fritzlen, 8 Cir., 135 F. 650, 655.