**Thorwald HANSEN, Plaintiff,**

v.

**Susan BARRETT, Defendant.**

**No. 5–60 Civil 15.**

United States District Court
D. Minnesota.
Fifth Division.

Sept. 2, 1960.

---

Paul J. Louisell and E. L. Fogarty, Duluth, Minn., for plaintiff.

Reavill, Jenswold, Neimeyer & Johnson, by John D. Jenswold, Duluth, Minn., for defendant.

DONOVAN, District Judge.

By this action plaintiff sought actual and punitive damages based on allegations of a complaint of thirty-nine lines[1] that

"* * * defendant * * * persuaded and induced * * *

1. The complaint, commendably brief, stated a cause of action for interference with lawyer-client relationship. The action was commenced in state court and transferred to federal court.

Clara E. Pastoret to breach * * * [a] contract * * * whereby she retained plaintiff as her attorney during her life to assist her in legal and business matters and, inter alia, made said agreement binding upon the executors of her estate and also executed her Will wherein plaintiff was appointed contingent Co-Executor and sole attorney for her estate * * * [and which, following her death on May 28, 1956, is] presently being probated * * * ; and according to the Inventory filed therein, the assets thereof total over One Million Dollars * * *."

Defendant by answer admitted the death of Clara E. Pastoret and the value of her estate, denied liability, and left "plaintiff to his strict proof."

Tried to Court and jury, the verdict was for the defendant. The matter is now before the Court by reason of plaintiff's motion for a new trial. Counsel were conversant with the applicable law at trial, having previously followed the route of a motion for summary judgment. Following denial of defendant's motion for summary judgment by Chief Judge Devitt on May 26, 1960,[2] the deposition of defendant was taken at Los Angeles, California. The trial of the case was set for June 20, 1960, at Duluth, Minnesota. A pretrial conference was had prior to drawing a jury.[3] Counsel were aware of the pitfalls of hearsay evidence and the Minnesota "dead man's statute."[4]

For convenience, the parties will hereinafter be referred to as plaintiff and defendant. The decedent, Clara E. Pastoret, will be referred to as the employer. The basis of plaintiff's cause of action is in evidence as Plaintiff's Exhibit 1, and will be referred to as the contract.

The issues in the instant case are tersely stated by the United States Court of Appeals, Eighth Circuit, which we quote:

"The courts of Minnesota have ruled that the elements essential to recovery for tortious interference are:

(1) the contract;

(2) the wrongdoer's knowledge thereof;

(3) his intentional procurement of its breach;

(4) without justification; and

(5) damages resulting therefrom."[5]

These constituted the five essential elements of the case, and the blueprint of trial for Court and counsel.

Plaintiff's evidence was directed at proving all five of said elements to conform with his burden of proof. Defendant's problem was to prove the absence of one or more of said elements.

The facts portray employer to be the widow of P. G. Pastoret, who at one time operated a plumbing shop in Two Harbors, Minnesota. While there he went into a general contracting business and built the Lake County Court House. Two daughters were born to employer and her husband. The elder daughter Alice is now Mrs. Alexander Macdonald of Des Moines, Iowa. Defendant Susan is the widow of James Barrett and now a resident of Newport Beach, California. Undoubtedly and naturally there was a close relationship between employer and her daughters. They visited employer at her home in Duluth, and she visited them in their homes in Iowa and California.

**2.** 183 F.Supp. 831.

**3.** During the pretrial conference the Court and counsel discussed the file contents disclosing the death of the employer and her principal executor and brother, one Frank H. Wade, and her sister, one Jessie Hanley. The Court invited counsel's co-operation towards avoiding error.

**4.** 38 Minnesota Statutes Annotated, § 595.04.

**5.** American Surety Company v. Schottenbauer, 8 Cir., 257 F.2d 6, 10, and citations therein.

·While a resident of Two Harbors, P. G. Pastoret and other Two Harbors businessmen became identified with the predecessor in genesis to the present Minnesota Mining and Manufacturing Company. The family moved to Duluth and defendant was educated in the public schools and Duluth State Teachers College. After graduation she taught school in Duluth and lived with her parents. While teaching in Duluth she would assist her father after school hours, attending to his office work and balancing the books, which she would take to the parental home for that purpose.

P. G. Pastoret died in 1931, leaving all of his estate to employer, who thereafter relied on her brother, Frank H. Wade, of Duluth, for advice and guidance in matters of business. He had been in the hardware business, and later became the owner and proprietor of the Duluth Dukes baseball team, a member of the Northern League. The baseball stadium promoted by Wade in Duluth is named after him. Wade had a general power of attorney from employer. Plaintiff, a lawyer, was Wade's attorney. Through Wade, plaintiff met employer and this subsequently resulted in the said contract of retainer exemplified by Plaintiff's Exhibit 1.

John G. Cedergren, a Duluth attorney, in or about 1948, prepared a will for employer at her request in which she nominated Wade as executor. In the event of Wade's death, she nominated Alexander Macdonald of Des Moines, Iowa, to succeed Wade as executor. This will is hereinafter referred to as the Cedergren will.

Defendant testified that the Cedergren will (which had been drawn prior to the probated will) named her uncle, Frank H. Wade and Alexander Macdonald, executors. That Macdonald, the husband of her elder sister Alice, was a resident of Iowa. That defendant told employer she

should have Minnesota residents as executors. That thereupon employer obtained the consent of James B. Enochs of Duluth to act as co-executor with Mr. Wade. That Thomas J. Naylor, a Duluth lawyer, was called to employer's home for consultation and what hereinafter will be referred to as the Naylor will, was prepared. That Alice Macdonald and defendant were in the room when the Naylor will was compared with the Cedergren will and it was identical except for the naming of James B. Enochs as executor in place of Macdonald. That following execution of the Naylor will her sister picked up the fragments of the Cedergren will and put them in her pocketbook. Defendant took the Naylor will to the Probate Court, registered it and received a certificate therefor.[6]

It is undisputed that employer was at all times physically and mentally capable of executing contracts and wills, such as evidenced by Exhibit Q (the Naylor will) and plaintiff's Exhibits 1 and 2. Plaintiff testified that Exhibit 2, hereinafter referred to as the Hansen will, is a duplicate of a will prepared by him and dated August 31, 1951, and as executed by employer, was witnessed in her presence by plaintiff and his secretary. Employer died in Duluth on May 26, 1956, but the original of the Hansen will, or a duplicate or copy thereof, was not presented for probate. The Naylor will was probated, and in connection therewith the final account and petition for settlement show total receipts from all sources to be $1,033,855.48. The order allowing final account is dated December 30, 1957.[7]

The foregoing summary of the facts and evidence in the instant case is sufficient for present purposes.

Plaintiff contends defendant unlawfully prevailed upon and induced employer to breach and terminate the contractual and professional relationship existing by vir-

6. The Naylor will was executed on July 31, 1950, and is the will admitted to probate by the Probate Court of St. Louis County, Minnesota.

7. This is in evidence as Plaintiff's Exhibit ·11:

tue of said contract, and thereby precluded the probating of the Hansen will, to his damage.

Defendant contends she had no knowledge of said contract or the Hansen will, and did nothing to induce breach of said contract.

■■ The substantive law of Minnesota controls this diversity case.[8] The jury having found in favor of defendant, the Court must accept as true all facts which the evidence reasonably tended to prove. It must be assumed that the jury resolved all conflicts in favor of defendant.[9] With the last-stated premise in mind, consideration is directed at plaintiff's assignments of error.

At the outset, plaintiff complains of misconduct of one of the jurors for failing to disclose at voir dire examination a recollection occurring subsequent to his hearing the opening statements by counsel, and which he disclosed to the Court following the evening recess. Before resuming trial on the next day the Court, in chambers, imparted the substance of the juror's telephone conversation to counsel for the parties, and thereupon the record discloses the following:

"Tuesday Morning Session, June 21, 1960, 10:00 o'clock a. m.

"The following proceedings were had in the Court's chambers following an off-the-record discussion:

"Mr. Louisell: I am willing to stipulate to dismissing him [the juror] under the facts that the Court has disclosed, that he called you and seemed worried about the fact that in some way the bank had been involved in other affairs or litigation affecting the estate of the decedent, Clara E. Pastoret, so that if he has the slightest queasiness or feeling of uneasiness about continuing to try this matter, why, it is agreeable with me to stipulate to try this case to a eleven-man jury and let him go.

"The Court: Well, I questioned him on that and he said it wouldn't make any difference to him at all. He said it is nothing that is material to him in the bank. It is just a matter of—I quess he mentioned Ray Chabot.

"Mr. Jenswold: Well, I might state the bank's position. The Northern City National Bank is the successor of City National Bank of Duluth. City National Bank and John Cedergren were, following Mrs. Pastoret's death in 1956, appointed as co-executors of the Pastoret estate. The juror in question is employed in some capacity in the bank—I forget what capacity. However, he has nothing to do with the duties of the bank as representative of the estate.

"Now it is true that the bank is involved simply as a stakeholder in an appeal from the final decree of distribution in the Pastoret estate; that the active parties are the two daughters, who have opposing claims as to the propriety of the final decree which has been entered. That matter is pending and undetermined before Judge Underhill in the State District Court. The juror in question,—

"The Court: Harris.

"Mr. Jenswold: (Continuing)— Mr. Harris, as I understand it, has simply called the fact of his knowledge that there is such a proceeding pending to the Court's attention. However, it should not, and I am sure will not, affect his duties or his ability to conscientiously and fairly and impartially perform the duties of a juror. And the bank, of course, of which he is an employee, is in no way interested in this lawsuit, which is a private affair between Mr. Hansen and one of the

8. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188.

9. Railway Express Agency v. Mackay, 8 Cir., 181 F.2d 257, 259, 19 A.L.R.2d

1248; Mounds Park Hospital v. Von Eye, 8 Cir., 245 F.2d 756, 759, 70 A.L.R.2d 335; American Surety Company v. Schottenbauer, supra.

heirs. Consequently, I see no reason for discharging him, and I would prefer, frankly, to try the case to a jury of twelve if there are any issues to go to the jury.

\* \* \*, (Further discussion between Court and counsel.)

"Mr. Louisell: Well, I don't care. It's all right. I will state for the record that I do not make a motion to excuse Mr. John Harris, but if Mr. Jenswold wants to excuse him, why, I am willing to excuse him by stipulation.

"The Court: You have no objection?

"Mr. Jenswold: I have no objection, have no reason for asking his discharge. I will say this, that he appears to be a man of above-average intelligence, and that is my aim in any jury that sits here."

 The alleged misconduct was manifestly unintentional and of no serious consequence. Relied on as a basis for a new trial, it is generally left for determination to the sound discretion of the trial court.[10] The Court, consistent therewith, exercises its discretion and rules the juror free from misconduct.

 Plaintiff also complains of over-emphasis of the five essential elements in the jury charge. The Court ruled upon all requests to charge the jury and advised counsel that except where the substance of said requests was included in the charge prepared by the Court, they would be ruled refused. This is the approved practice.[11] The charge as given by the Court was concise, all-inclusive of the law applicable to the instant case, and was correct. The five essential elements, supra, as hereinbefore quoted, were taken from a recent decision of the Eighth Circuit Court of Appeals.[12]

 It is case-book law that the trial court is allowed considerable latitude in the choice of language used in jury instructions. All that is required is that the charge as a whole shall convey to the jury a clear and correct understanding of the law applicable to the case on trial. The charge in the case at bar, as written in longhand by the Court, was read to counsel before arguments to the jury commenced. When concluded, the Court invited counsel to direct attention "to errors of law or any errors in summary to the jury."

In my opinion the charge as given was a fair and just exposition of the issues presented and the rules of law applicable thereto.[13]

 Restating the law that controls the case being tried does not merit the complaint of "over-emphasis." Certainly a restatement in the interest of clarity does not constitute error in the charge to the jury in the case at bar.

 In conclusion it should be said that plaintiff's case was well pleaded, well prepared and well presented. Had the jury returned a verdict for plaintiff, it would find support in the record. The verdict was for defendant. Plaintiff's motion for a new trial must be subjected to several recognized and well-established rules. First, "motions for a new trial should [under circumstances most favorable to movant] be granted cautiously and sparingly and only in the furtherance of substantial justice."[14] Second, the burden in demonstrating error is a heavy one.[15] All of the assigned errors in support of the motion have been studied by the Court and it is my con-

10. Engstrom v. Duluth, M. & N. Ry. Co., 190 Minn. 208, 215, 251 N.W. 134.

11. Chicago, Rock Island and Pacific Railroad Company v. Emery, 8 Cir., 233 F.2d 848, 850.

12. American Surety Co. v. Schottenbauer, supra.

13. Hill v. Northern Pac. Ry. Co., 210 Minn. 190, 194, 297 N.W. 627.

14. Leuba v. Bailey, 251 Minn. 193, 207, 88 N.W.2d 73, 83; Hanson v. Ford Motor Company, 8 Cir., 278 F.2d 586, 589, 590, 596.

15. American Surety Company v. Schottenbauer, supra; W. Hodgman and Sons, Inc. v. Motis, 8 Cir., 268 F.2d 82, 86.

sidered opinion that plaintiff has had his day in Court, free from prejudicial error, and that there was sufficient probative evidence to support the verdict returned by the jury.

Plaintiff's motion is denied.

It is so ordered.

Plaintiff is allowed an exception.