HELEN McHARDY v. STANDARD OIL COMPANY
OF INDIANA AND OTHERS.
WILLIAM JAMES McHARDY v. SAME.
MARGARET ORR, RESPONDENT.[1]

July 14, 1950.

Nos. 34,981, 34,982.

[1]Reported in 44 N. W. (2d) 90.

*Gillette, Nye, Montague, Sullivan & Atmore,* for appellants.

*M. J. Mulvahill,* for respondents McHardy.

*John Gannon, Charles W. Sterling,* and *Osmon R. Springsted,* for respondent Margaret Orr.

KNUTSON, JUSTICE.

This case arises out of a head-on collision between an automobile owned by plaintiff William James McHardy, driven by his wife, plaintiff Helen McHardy, and an automobile driven by defendant Margaret Orr. Separate actions commenced by Mr. and Mrs. McHardy were consolidated for trial and on appeal.

The locale of the collision was trunk highway No. 53, commonly known as the Miller trunk highway, which runs generally in a north-south direction between Duluth and Hibbing. Crossing the Cloquet River is a bridge 20.3 feet wide, but which, because of broken curbs along both sides, has been narrowed down so that the traveled portion is 19 feet 7 inches in width. The bridge is about 253 feet long. It has metal guardrails 3.5 feet high on both sides. There is no other superstructure. The pavement at each end of the bridge is bituminous "blacktop." There are guardrails, consisting of poles set in the ground on which is attached a cable, approaching the bridge at each end. These guardrails extend 225 feet north of the bridge. The poles nearest the bridge at that end are about the same distance apart as the width of the blacktop,

which is about 21.3 feet. As they extend north, they are farther apart, leaving more of a shoulder on each side of the blacktop.

To the south, the highway is straight for some distance. About a quarter of a mile south, there is a crest of a small hill, so that the bridge is clearly visible, after reaching that crest, to a vehicle traveling in a northerly direction.

To the north, the highway is straight for about 225 feet to the end of the guard posts and then begins to curve slightly to the east at about a four-degree turn. Eight hundred feet north of the bridge the road is 28 feet east of a straight line extended from the bridge. There is brush on the east side of the highway, which would be on the inside of the curve, but a person driving south can see the bridge from a distance of 825 feet north by looking across the curve toward the bridge.

The collision occurred at about 3 p. m. on February 25, 1948. The day was clear and visibility good. There was some snow and ice on the shoulder, but the driving portion of the blacktop was dry.

On the day in question, defendant Alex Leonard, driving a truck owned by his employer, defendant Standard Oil Company, approached the bridge from the north. The truck he was driving was painted red. It was 23 feet 4 inches long, 7 feet 11 inches wide, had a stake body on it, and was loaded with 23 empty oil barrels. At the same time, Helen McHardy approached the bridge from the south.

Leonard's testimony is that he stopped his truck five to ten feet north of the bridge, with his right wheels almost touching the guardrails, in order to permit the McHardy car, which he saw coming from the south, to cross the bridge. Mrs. McHardy testified that she saw the truck standing still when she came over the crest of the hill a quarter of a mile away, and that it remained standing while she traveled that distance, all the time on its right half of the highway. Her testimony is that as she neared the parked truck she saw a car coming south at a high rate of speed. When she realized that the car was not going to stop, she slowed down. The car,

which proved to be the Orr car, swung over to her side of the road and ran into her head on. She testified:

"Q. As you got close to the truck, did you see another automobile come?

"A. Well, I saw a car coming. I was quite close to the truck, yes, when I saw another car coming south bound.

"Q. That you learned later was Mrs. Orr's Ford car?

"A. Yes.

"Q. What did you notice first about the Ford car as to its speed?

"A. I thought it was going quite fast.

"Q. I see. Was it on its own side of the road when you first saw it?

"A. Yes, it was.

"Q. That would be coming in the same direction as the truck was pointed?

"A. Yes.

"Q. And what did you do then?

"A. Well, I saw this car coming. I slowed down even more. Well, it wasn't very long after that that I was by the truck, the Orr car was piled into me and there was the accident.

"Q. I see. Where did it occur with reference to your lane of traffic?

"A. The accident happened on my lane of traffic.

"Q. I see. Just tell us a little bit more definitely so we get the picture a little better. You are driving along pretty close to the truck—

"A. Yes.

"Q. —and you see the Orr car coming, then what?

"A. Then the Orr car was coming and I was quite close to the truck, and pretty soon I realized that she wasn't going to stop and I slowed down more, and by that time we were—she was cutting across the highway into my lane. I was in my own lane and she cut across the road and hit us and that was the accident.

"Q. I see. Well, why didn't you turn to the right?

"A. Well, there was a deep embankment. There were guard-rails and I couldn't go that way. There was no room for me to go.

"Q. Why didn't you turn to the left?

"A. I couldn't go that way either because the Standard Oil truck was there.

"Q. Did you have time to stop completely?

"A. I don't know whether I stopped completely. I probably did. As soon as I realized that Mrs. Orr couldn't stop her car, I no doubt put my foot on the brake; because when you drive, you just do those things, but it happened very quickly. Now I couldn't tell you exactly that I just put my foot on the brakes and say I remember putting my foot on the brake, but I am sure I did. I must have."

The McHardy car moved very little after the impact. The Orr car swung around so that the rear wheels were over the guardrail, with the front end of the car facing in a northwesterly direction.

One of the passengers in the Orr car testified that as they came around the bend, about 800 feet north of the bridge, the truck was traveling about 250 feet ahead of them and somewhat slower than the Orr car; that the truck started to slow down and, without giving any warning, stopped suddenly on the highway when about 100 feet ahead of the Orr car; that Mrs. Orr turned to the right and skidded on the slush and snow on the shoulder; and that in order to avoid hitting the truck Mrs. Orr swung to the left and collided with Mrs. McHardy. She also testified that Leonard moved his truck nearer the bridge after the accident.

Mrs. Orr was quite indefinite as to how far she was behind the truck when she realized that it had come to a stop, but on cross-examination she did testify that it had stopped when she reached the posts, which are 225 feet north of the bridge.

Deputy sheriff Fred Wallin, who was following the Orr car a short distance, arrived on the scene almost immediately after the accident. He testified that the truck was then five to eight feet north of the bridge; that the nearest of the two cars was 50 feet from the truck; and that the point of impact was about 80 feet north of the

bridge. He further testified that the right wheels of the truck were close to the cable on the west side of the road, and his testimony in all things corroborated that of Leonard and Mrs. McHardy.

It is conceded that neither of the cars came in contact with the truck and that the truck was parked so as to leave less than 20 feet of the traveled portion of the road open to traffic.

Mrs. McHardy sued to recover $2,500 for personal injuries, and her husband sued to recover $1,100 damages to his car. The jury returned a verdict for Mrs. McHardy against the Standard Oil Company and Leonard in the sum of $4,500 and for Mr. McHardy for $1,600. It returned a verdict for defendant Margaret Orr. Mrs. McHardy moved for an order of remittitur reducing her verdict to $2,500, which was granted. Mr. McHardy likewise moved for an order of remittitur reducing his verdict to $946.04, which was also granted. The Standard Oil Company and Leonard moved in the alternative for judgment notwithstanding the verdict or for a new trial, which motions were denied in each case. The case comes here on appeals from orders of the trial court denying the blended motions of the Standard Oil Company and Leonard.

Appellants contend that they were entitled to a directed verdict and hence that they are now entitled to judgment notwithstanding the verdict for the reason that there is no evidence in the case which establishes any negligence on their part that was the proximate cause of plaintiff's injuries; and, second, if that is not true, that they are entitled to a new trial for the reason that the verdict of the jury is based on passion and prejudice.

Appellants contend that Mrs. McHardy is bound by her own testimony as to the location and movement of the Standard Oil truck, and that by accepting such testimony it conclusively appears that the negligence of Leonard, if any, was not the proximate cause of plaintiff's injuries. Their contention is untenable for the reason that the rule is inapplicable to the testimony of Mrs. McHardy. In Vondrashek v. Dignan, 200 Minn. 530, 534, 274 N. W. 609, 612, the rule as stated in Harlow v. Leclair, 82 N. H. 506, 512, 136 A. 128, 131, 50 A. L. R. 973, is quoted by us with approval. It is:

"* * * If a party's testimony consists only of a narrative of events in which he participated or which he observed, there is an obvious possibility that he may be mistaken like any other witness. In such a situation, if other witnesses give a different version of the occurrence, his testimony must be weighed with theirs and he will not be concluded by his own statements. But when a party testifies to facts in regard to which he has special knowledge, such as his own motives, purposes or knowledge, or his reasons for acting as he did, the possibility that he may be honestly mistaken disappears. His testimony must be either true or deliberately false. To allow him to contradict his own testimony under these circumstances would not be 'consistent with honesty and good faith.' Whether his statements be true or false, he will be bound by them, and contradictions by other witnesses become immaterial. He will not be allowed to obtain a judgment based on a finding that he has perjured himself."

Mrs. McHardy's testimony was simply a narrative of her observation of the movement of the truck. It did not relate to a matter peculiarly within her own knowledge. The jury could have found that she was mistaken and that the occupants of the Orr car were in a better position to observe the movement of the truck than was plaintiff. The court correctly applied this rule in its instructions to the jury, as follows:

"If you find from the evidence that Mrs. Orr knew, or in the exercise of ordinary care should have known, of the presence of the truck standing or stopping ahead of her for a length of time sufficient to enable her to bring her automobile to a stop behind the truck, and on her own side of the highway, then and in that event your verdict should be in favor of the defendants Leonard and the Standard Oil Company."

If we were to accept Mrs. McHardy's testimony that the truck was parked on the north end of the bridge on its side of the highway during all the time that she traveled the quarter mile south of the bridge, such parking in broad daylight would not be the proximate

cause of plaintiff's injuries. Geisen v. Luce, 185 Minn. 479, 242 N. W. 8.

It must be conceded that even a momentary stop violates M. S. A. 169.32[2] (Fleenor v. Rowley, 198 Minn. 163, 269 N. W. 370) and is prima facie negligent. But even assuming that there is no legal justification or excuse shown, the question still remains whether it is the proximate cause of plaintiff's injuries.

Under the circumstances, appellants were not entitled to a directed verdict, and the court's orders denying their motions for judgment notwithstanding the verdicts were proper.

We do not have before us the question whether Mrs. Orr was guilty of negligence as a matter of law which proximately contributed to the collision, so we refrain from expressing any opinion on that phase of the case.

Appellants' contention that they were entitled to a new trial for the reason that the verdicts were based on passion and prejudice is much more troublesome.

It is obvious that the jury almost completely ignored the instructions of the court. While occupants of the Orr car did testify that the truck was moving ahead of the Orr car and suddenly stopped, such testimony is not at all convincing, in view of the testimony of the deputy sheriff, of Mrs. McHardy, and of defendant Leonard. The deputy sheriff was a disinterested witness. That cannot be said of the occupants of the Orr car. Mrs. McHardy was positive in her

[2]"Upon any highway outside of a business or residence district no person shall stop, park, or leave standing any vehicle, whether attended or unattended, upon the paved or improved or main traveled part of the highway when it is practical to stop, park, or so leave such vehicle off such part of said highway, but in every event a· clear and unobstructed width of at least 20 feet of such part of the highway opposite such standing vehicle shall be left for the free passage of other vehicles and a clear view of such stopped vehicle be available from a distance of 200· feet in each direction upon such highway.

"This section shall not apply to the driver of any vehicle which is ·disabled while on the paved or improved or main traveled portion of a highway in such a manner and to such extent that it is impossible to avoid stopping and temporarily leaving such disabled vehicle in such position."

testimony that the truck was parked while she traveled a quarter of a mile in approaching the bridge. If this is true, the negligence of appellants, if there is such, could not possibly constitute the proximate cause of plaintiff's injuries. If this discrepancy in the testimony as to the movement of the truck was all that is involved, we would be inclined to permit the verdicts to stand, but, coupled with other facts, it seems clear to us that the jury either ignored the court's instructions or failed to understand them.

Mrs. McHardy sued for $2,500. She did not even call a doctor to substantiate her claims of personal injury. The jury was never told that the maximum recovery which could be permitted under the pleadings was $2,500. They returned a verdict for $4,500, nearly twice the amount plaintiff sued for, which was reduced by the court to $2,500 upon motion of plaintiff. The jury should have been instructed that the maximum amount of recovery was $2,500, but, regardless of this, the verdict was clearly excessive, even by plaintiff's own yardstick. It is not likely that plaintiff minimized the extent of her personal injuries in her complaint.

When we consider the verdict in Mr. McHardy's case, it is even more evident that the jury paid no attention to the court's instructions. Mr. McHardy sued for $1,100 as the value of his car on the theory that the car was completely demolished. The only proof introduced was the cost of repairing the car, which amounted to $946.04. The court, in these words, instructed the jury that its verdict must be limited to the cost of repair:

"* * * there was damage to a car, and Mr. McHardy seeks to recover for those damages. If you find he is entitled to recover, you should allow him such amount as would reasonably cost to repair the car and place it in substantially the same condition as it was in before the collision."

The jury was not told the maximum recovery permitted other than the quoted instruction. In spite of the evidence and the court's instruction, the jury returned a verdict of $1,600. Here, again, on motion of plaintiff, the court reduced the verdict to $946.04.

In many cases, reduction of an excess verdict accomplishes substantial justice. Where the verdict, in addition to being excessive, is against the great weight of the evidence, there should be a new trial rather than a reduction in the amount of the verdict. Miller v. Hogan, 81 Minn. 312, 84 N.W. 40; Hallen v. Montgomery Ward & Co. Inc. 203 Minn. 349, 281 N.W. 291. Where it appears that passion and prejudice may have affected the jury's determination of other issues, as well as the amount of the verdict, a new trial should be granted. Craig v. Cook, 28 Minn. 232, 9 .N. W. 712.

Reduction of the verdicts in these cases to the maximum amount which plaintiffs could be permitted to recover under the pleadings or the evidence does not remove the taint of passion and prejudice from the determination of other issues. We have no way of knowing how much the jury would have returned had it been informed as to the maximum permissible recovery. Neither do we have any way of determining how far the jury went in ignoring the court's instructions in determining where liability rested as between the defendants.

Taking all these matters into consideration, we are convinced that the verdicts of the jury so far ignored the evidence and the court's instructions relating to the law that the conclusion is inescapable that they were based on passion and prejudice. For that reason there must be a new trial.

Reversed.