JEANNE M. LEMAN v. STANDARD OIL COMPANY
OF INDIANA AND OTHERS.
EDWARD J. LEMAN v. SAME.[1]

January 27, 1956.

Nos. 36,696, 36,697.

*Stone, Manthey & Carey* and *Nye, Montague, Sullivan, Atmore & McMillan,* for appellant.

*M. J. Mulvahill* and *Fryberger & Donovan,* for respondents.

KNUTSON, JUSTICE.

This case arises out of an automobile collision which occurred on Trunk Highway No. 53 between Duluth and Hibbing on February 25, 1948, between an automobile driven by Margaret Orr, in which several people were riding as passengers, and an automobile driven by Helen McHardy. Several separate actions were commenced and tried as a result of this collision. The case now before us has been here

[1]Reported in 74 N. W. (2d) 513.

before. Leman v. Standard Oil Co. 238 Minn. 379, 57 N. W. (2d) 814. Two other cases arising out of this collision likewise have been here. McHardy v. Standard Oil Co. 231 Minn. 493, 44 N. W. (2d) 90; Devall v. Standard Oil Co. 239 Minn. 87, 57 N. W. (2d) 835. The facts are fully developed in our former decisions, and we see no need for repeating them here.

In the first trial of the Leman case the jury returned a verdict in favor of defendant Standard Oil Company. The trial court granted a new trial for errors in its instructions to the jury. We affirmed. Leman v. Standard Oil Co. 238 Minn. 379, 57 N. W. (2d) 814. On a retrial of the case, in addition to a general verdict, the trial court submitted the following special interrogatory to the jury at the request of defendant Standard Oil Company:

"Was the Standard Oil Company truck parked near the north end of the bridge on its side of the highway during all the time that Mrs. McHardy traveled the quarter of a mile south of the bridge?"

The jury answered the interrogatory in the negative and returned a general verdict in favor of the Standard Oil Company. The trial court again granted a new trial for errors in its instructions. These appeals followed.

Plaintiffs move to dismiss the appeals on the ground that the orders granting a new trial are not appealable orders.

M. S. A. 605.09 reads in part:

"An appeal may be taken to the supreme court by the aggrieved party in the following cases:

\* \* \* \* \*

"(4) \* \* \* from an order granting a new trial if the court expressly states therein, or in a memorandum attached thereto, that the order is based exclusively upon errors of law occurring at the trial, and upon no other ground; and the court shall specify such errors in its order or memorandum, \* \* \*."

The orders involved here recite that the motions for a new trial are based on the following grounds: (1) That the verdicts are not justified by the evidence; (2) that the verdicts are contrary to law;

and (3) errors of law occurring at the trial in giving three specific instructions at the request of defendant Standard Oil Company. The orders thereafter provide:

"The motion of the plaintiffs to vacate and set aside the verdicts of the jury in said actions in favor of Standard Oil Company and to grant new trials thereof is hereby granted exclusively for errors of law occurring at the trial and upon no other grounds, which errors of law are as follows:"

Thereafter the court lists the errors in its instructions which are said to have been erroneous. The orders finally conclude with the words: "The said motion or motions in all other particulars are hereby denied."

Following the orders the court attached a memorandum discussing the facts or the merits of the case, which seemingly goes beyond a discussion of the errors stated in its order. The memorandum, however, concludes as follows:

"Accordingly, the Court grants a new trial herein exclusively upon errors of law occurring at the trial, namely the giving of the erroneous instructions set out in said order, and for no other reasons."

It is the contention of plaintiffs, as we understand it, that the memorandum shows that the court did not limit the order granting a new trial to errors of law and, therefore, that the order is not appealable.

The memorandum is not expressly made a part of the orders. We have held in a number of cases that, where a memorandum is not expressly made part of an order, it may be referred to for the purpose of interpreting the order but may not be used for the purpose of impeaching or contradicting it.[2] Here the orders are explicit and clear. They need no interpretation and, under the rule stated above, may not be impeached by the memorandum. The orders are appealable, and the motion to dismiss is denied.

---

[2]Alton v. Chicago, M. & St. P. Ry. Co. 107 Minn. 457, 120 N. W. 749; Ross v. Duluth, M. & I. R. Ry. Co. 207 Minn. 157, 290 N. W. 566; Johnson v. Johnson, 223 Minn. 420, 27 N. W. (2d) 289.

The court based its orders on alleged errors in giving plaintiffs' requested instructions Nos. 6, 7, and 8. The court did not give the instructions exactly as requested but did give them in the language which will be discussed hereafter.

The first instruction complained of was as follows:

"Now, we have another statute which provides:

" 'No person shall stop or suddenly decrease the speed of a vehicle without first giving an appropriate signal in the manner provided herein to the driver of any vehicle immediately to the rear unless there is a good and sufficient reason for not being able to do so.'

"The methods of signaling are as follows:

" 'The signals herein required shall be given either by means of hand and arm or by a signal lamp or signal device of a type approved by the commissioner, but when a vehicle is so constructed or loaded that a hand and arm signal would not be visible in normal sunlight, and at night both to the front and rear of such vehicle, then the signals must be given with such a lamp or device.

" 'Any vehicle may be equipped and when required under this chapter, shall be equipped with a stop lamp on the rear which shall emit a red or yellow light and which shall be actuated upon application of the service (foot) brake and which may, but need not be, incorporated with a tail lamp and which shall be plainly visible and understandable from a distance of one hundred (100) feet to the rear during normal sunlight and at night.'

"Under the circumstances of this case no signal was required of and by the driver of the Standard Oil truck by his hand or hand and arm extended to one side if his signal lamp was operating properly.

"If from the evidence you find that the Standard Oil Company driver did suddenly stop or suddenly decrease the speed of his car and that at that time there was a vehicle immediately in the rear and that the Standard Oil Company's driver failed to give the required signal either by hand or arm or by a signal light on the rear of his truck, then the defendant Standard Oil Company would be guilty of prima facie negligence and you could find the Standard

Oil Company negligent in the absence of reasonable excuse or justification for said act.

"If, however, you find that defendant Standard Oil Company driver did not stop or suddenly decrease the speed of the truck while there was a vehicle immediately to the rear, then there was no violation of said statute and no claim of negligence against the Standard Oil Company could be based upon any claimed violation of this particular statute. The test would not be the driver's belief that his statutory violation was in the best interests of safety but rather whether, in the light of all facts and circumstances, his action in violating the statute in the interests of safety were such as would have been taken by an ordinarily prudent and careful person acting under the same or similar circumstances."

Plaintiffs contend that this instruction was erroneous for the reason that it overemphasized the position of defendant Standard Oil Company. It is only the last part of the instruction which plaintiffs object to. We do not so read the whole instruction. The court simply pointed out what result would follow if the jury found facts either way. The instruction is as favorable or unfavorable to one as to the other. Obviously the court could not name both parties last, and that is the only advantage gained by one over the other that we can see. We see no error in this instruction.

The next instruction complained of as given by the court is as follows:

"The statutes of Minnesota provide, * * *:

" 'Upon any highway outside of a business or residential district no person shall stop, park, or leave standing any vehicle, whether attended or unattended, upon the paved or improved or main traveled part of the highway when it is practical to stop, park, or so leave such vehicle off such part of said highway, but in every event a clear and unobstructed width of at least 20 feet of such part of the highway opposite such standing vehicle shall be left for the free passage of other vehicles and a clear view of such stopped vehicle be available from a distance of 200 feet in each direction upon said highway.'

"There is no doubt that when the Standard Oil Company truck was parked north of the bridge the driver did not leave 20 feet of the traveled portion of the highway opposite the parked truck open for the passage of other vehicles. However, if you find that the only evidence of negligence on the part of the Standard Oil Company was that the truck was parked in violation of said statute and if you further find that such parking was reasonably excusable or justifiable under all the facts and circumstances as brought out in the evidence, such violation of such statute would not constitute a negligent act and there could be no verdict against the Standard Oil Company based upon a violation of such statute. However, let me repeat, the test would not be the driver's sincere and possibly honest belief that a statutory violation was in the best interests of safety but rather whether, in the light of the facts and circumstances, his act in violating the statute in the interests of safety was such as would have been taken by an ordinary, careful, prudent person acting under the same or like conditions.

"If you find that the acts of negligence of Mrs. Orr and the Standard Oil Company combined or concurred or acted together to proximately cause the collision in which the plaintiffs were injured, then the plaintiffs can recover against both Mrs. Orr and Standard Oil Company."

We have quoted somewhat more of this instruction than plaintiffs did in their motion for a new trial, but we feel that the whole of the instruction must be considered in determining whether it constitutes error. The court was of the opinion that the jury had found that the Standard Oil Company truck was not parked at the time of the collision but was in motion by virtue of its answer to the special interrogatory. Of course, the court is in error in assuming that the jury found, by its answer to the interrogatory, that the Standard Oil Company truck was not parked at any time. Even plaintiffs do not make such a claim. All the jury found was that the truck was not parked near the north end of the bridge *during all the time* Mrs. McHardy traveled a quarter of a mile south of the bridge. The interrogatory says nothing about parking at any other time.

Plaintiffs argue that the evidence is insufficient to show justification for stopping at any time. That matter is not before us. The court adequately instructed the jury on the question of justification. The jury found against plaintiffs. It cannot be held as a matter of law that there was no justification. We find no error in this instruction. Furthermore, plaintiffs requested the court to charge the jury on the parking statute. Plaintiffs' request No. 5 reads as follows:

"There is no dispute between the parties that when Alex Leonard parked the truck north of the bridge he did not leave twenty (20) feet of the traveled portion of the highway opposite the parked truck open for passage of another vehicle."

The final instruction upon which the court based its orders is as follows:

"If from the evidence in this case you find that Mrs. Orr knew or in the exercise of ordinary care should have known of the presence of the truck standing or stopping ahead of her for a length of time sufficient to enable her to bring her automobile to a stop behind the truck and on her own side of the highway, then and in that event there can be no verdict against defendant Standard Oil Company."

This identical instruction was approved in the cases that heretofore have been before us. In Leman v. Standard Oil Co. 238 Minn. 379, 386, 57 N. W. (2d) 814, 818, we said of this instruction:

"We believe this instruction was correct. It is in accord with numerous decisions of this court in cases involving similar facts. Medved v. Doolittle, 220 Minn. 352, 19 N. W. (2d) 788; Geisen v. Luce, 185 Minn. 479, 242 N. W. 8. The same instruction was approved in the McHardy case above referred to. It would seem applicable here in the event the jury determined that Margaret Orr had had ample time to bring her car to a stop after first observing the truck stopping in front of her car."

In McHardy v. Standard Oil Co. 231 Minn. 493, 499, 44 N. W. (2d) 90, 94, we said of this instruction:

"If we were to accept Mrs. McHardy's testimony that the truck was parked on the north end of the bridge on its side of the highway

during all the time that she traveled the quarter mile south of the bridge, such parking in broad daylight would not be the proximate cause of plaintiff's injuries."

In Devall v. Standard Oil Co. 239 Minn. 87, 92, 57 N. W. (2d) 835, 838, we said of this instruction:

"The latter instruction was approved by this court in both the McHardy and the Leman cases, *supra,* and, when read in light of the court's general charge on proximate cause, was a clear and adequate presentation of the law applicable to this issue of the case."

Of course, what has often been said of instructions is true here. The instructions must be read as a whole, having in mind the evidence in the case. Parts of it taken out of context may not be used as a basis for a new trial if, when read as a whole, the instructions clearly and fairly present the law applicable to the facts. Furthermore, no exceptions were taken to the court's instructions at the trial. The errors claimed here are such as, for the most part, are unavailable on a motion for a new trial unless called to the court's attention, under Rule 51 of Rules of Civil Procedure, at the time of trial.

It would seem from the trial court's memorandum that the court was of the opinion that, inasmuch as the jury returned a verdict in favor of plaintiff against the Standard Oil Company on the same facts in the Devall case, the verdict here should not permit the Standard Oil Company to escape liability. Of course, that is one of the peculiarities of jury trials. The outcome of these cases depended almost entirely upon which witnesses the jury was willing to believe. It is not uncommon for different juries to accept the versions of different witnesses. There is no more reason to assume that the first jury was right and the second wrong than that the opposite is true. The evidence is such that the jury could find either way, depending upon which witnesses it believed. The mere fact that some other prior jury may have found contrary to this jury is no justification for granting a new trial in itself.

We find no error in the instructions assigned when read together with the balance of the charge, and we are of the opinion that the verdict should stand.

Reversed.