ROBERT E. LEE v. EDWARD A. SMITH.

92 N. W. (2d) 117.

August 15, 1958—No. 37,314.

*Freeman, Peterson, Hoppe & Gaughan, Thomas J. Burke,* and *Frank L. King,* for appellant.

*Bradford & Kennedy,* for respondent.

MURPHY, JUSTICE.

This is an appeal from an order denying defendant's motion for judgment notwithstanding the verdict or for a new trial and from the judgment entered therein. The action was brought to recover for personal injuries alleged to have been sustained by reason of the defendant's negligence. Plaintiff was injured as a result of an automobile accident in which the car he was driving collided with the rear end of defendant's truck.

From the record it appears that on May 28, 1956, at about 8 p. m., plaintiff was driving alone in his 1953 Buick automobile, proceeding in a southerly direction on Highway No. 10 about 6 miles south of Motley, Minnesota. At the time of the accident defendant was driving a 1951 Chevrolet livestock truck on the same highway in the same direction. The defendant was accompanied by one Mrs. Kutzler and her two sons, ages 7 and 8 years. Mrs. Kutzler occupied the passenger's seat near the right-hand door of the cab. One of the boys sat on his mother's lap while the other was seated between her and defendant.

At the time of the accident it was dark, and a drizzle or light rain was falling. Highway No. 10 has a blacktop surface, 24 feet wide, with a centerline marking two 12-foot lanes. The surface of the highway was not slippery. On both sides of the blacktop there are dirt or cinder shoulders 7 or 8 feet in width.

Immediately prior to the accident plaintiff had been traveling at a rate of speed of approximately 40 to 45 miles per hour. His car was in good mechanical condition, his windshield wipers were working properly, and due to the reduced visibility caused by the rain, plaintiff drove with his headlights on low beam. Plaintiff testified he could see

approximately 100 to 125 feet ahead and estimated that he could stop within a distance of 90 to 100 feet. As he proceeded along the highway, the rear of defendant's truck suddenly appeared before him at a distance of about 60 to 70 feet. He applied the brakes and attempted to veer his vehicle to the right, but was unable to avoid the collision. The left front of his car struck the right rear portion of the platform and rack of the truck. There was extensive damage to the vehicles and plaintiff suffered severe physical injuries, which are the subject of this action.

The record indicates that plaintiff was rendered unconscious by the impact and does not remember anything that occurred from the time of the accident until he recovered consciousness in the hospital at Staples, Minnesota. He testified, however, that he observed no lights on the rear of the truck when he suddenly came upon it. The first person to arrive at the scene of the accident was one Cincoski, who testified that the only light which was burning on the rear of the truck after the collision was a small, dimly lit clearance light on the left rear corner of the platform. His testimony was corroborated by two highway patrol officers who also testified that the only light they saw was the clearance light on the left rear of the truck's platform. Both officers said that this clearance light was visible from a distance of 100 to 200 feet to the rear of the truck and that the back of the truck was covered with dirt, mud, and manure. One of the officers testified: "If there were reflectors they were not reflecting because they were dirty." Cincoski, who was driving north in the east lane of Highway No. 10, also testified he did not observe any clearance lights or marker lights burning on the front of the truck as he approached it from the south.

At the time defendant purchased the truck in March 1956 it had an 18-foot platform mounted on the frame. This platform was too long for defendant's purposes, so he shortened it 2 feet and added the stock rack. It is important to note that in the process of shortening the platform defendant disconnected and removed the rear clearance lights. Upon completion of the shortening of the platform and building the stock rack, defendant mounted and connected the clearance lights himself. The replacement of the clearance lights had been completed "a day or so before" the accident, and the trip defendant was making when the accident occurred was the first after the rear clearance lights had been

replaced. After defendant replaced and connected these lights, he did not have them inspected by a garage mechanic or other person familiar with truck lighting systems. The defendant testified he had been in the trucking business since 1935 and had always taken care of the lighting systems on trucks he operated.

At the time defendant purchased the truck and on the day of the accident, it was equipped with a taillight which was mounted on the left side of the frame 3 feet forward from the rear of the platform and inward 24 inches from the extreme left edge of the platform. The truck also had a rear turn signal mounted on each side of the frame. These signals were approximately 4 or 5 inches in diameter. The left rear turn signal was larger than the taillight and was mounted to the rear of the taillight in such a position that when one observed the truck from the rear the taillight was concealed by the turn signal. The taillight and headlights were operated on the same circuit by the same switch. Similarly, the rear clearance lights and marker lights on the front of the cab were operated on a second switch separate from the one on which the headlights and taillight were operated.

A short time prior to the accident defendant had picked up Mrs. Kutzler and her two children at the Kutzler farm on the Shamineau Road. They proceeded in a southeasterly direction down this road to its intersection with Highway No. 10. This road does not intersect Highway No. 10 at right angles but comes into the highway from a northeasterly direction. The defendant and Mrs. Kutzler testified that they stopped at the intersection of Highway No. 10 and looked in both directions. Because of the direction from which they entered Highway No. 10, there was difficulty in getting a view to the north. Mrs. Kutzler testified that, because of this difficulty, she opened the right-hand door of the cab and stepped out onto the running board in order to get a better view. From this vantage point she could see approximately one-third of a mile to the north to a point where a hill obstructed further vision. Defendant then proceeded onto Highway No. 10 and continued in a southerly direction to the point where the accident occurred, 750 feet from the intersection.

Two occupants of the truck testified that, at the time they felt the impact of the collision, the truck was proceeding at a speed of about 20

to 25 miles per hour. The witness Cincoski however stated that as he approached from the south he observed a set of lights of a vehicle, which turned out to be defendant's truck. To the witness Cincoski this vehicle did not appear to be moving. Plaintiff testified he was not sure whether the truck was stopped or moving very slowly when it first appeared on the highway ahead of him.

Plaintiff predicates negligence on the part of defendant by reason of failure to have the rear end of the truck properly lighted and further asserts that the truck was either stopped upon the highway or was moving very slowly at the time of the accident. Defendant on the contrary contends the rear end of his vehicle was properly equipped with lights, all of which were functioning. In addition the defendant testified there were four reflectors on the rear of the truck, two of which were on the rear of the platform while the other two were on the endgate. The case was submitted to the jury, which returned a verdict for plaintiff.

■ In its instructions to the jury the trial court read various statutory provisions relating to the operation of automobiles, which defendant contends were inapplicable and misleading. These claims of error are specifically directed to the reading of M. S. A. 169.37, the so-called overcrowding statute; § 169.15, the slow-speed statute; and § 169.50, subd. 2, which relates to illumination of the rear registration plate. The appellant further contends that the court erred in submitting the emergency rule and various other asserted deficiencies of lesser consequence. In preface to a discussion of the contentions relating to the error of the court in reading statutes, we are controlled here by the statement contained in the recent case of Tollefson v. Ehlers, 252 Minn. 370, 376, 90 N. W. (2d) 205, 210, in which we said:

"* * * It is not always easy for the trial court to decide whether it is submitting only those statutes which have a direct bearing upon the case or whether it is actually resolving a fact question for the jury by not giving a certain statute and thereby limiting the scope of its deliberation. Where, upon different versions of the facts, different statutes might be applicable, the trial court should not, in effect, foreclose consideration of a tenable theory by failing to give relevant statutes or sections thereof.

* * * where factual matters are involved, if sufficient evidence is introduced to sustain a jury's finding in accordance with a possible version thereof, a party is entitled to have any statute which may be relevant given to the jury, provided that in those instances where a statute may be relevant only upon a single interpretation of the facts, the trial court limits such statute in its application either by a specific instruction or by the entire tenor of its charge."

■ With reference to the asserted error in reading § 169.37,[1] defendant points out that, while it is true there were more than three persons in the front seat of the cab, two of them were children 7 and 8 years of age. He further argues that there was no testimony that the cab was overcrowded or that the number of persons in it interfered with the driver's control. In support of his contention that the reading of the statute was error, defendant points to Ohrmann v. Chicago & N. W. Ry. Co. 223 Minn. 580, 27 N. W. (2d) 806, where it was held that, where several issues of fact are tried and any one of them is erroneously submitted to the jury and a general verdict is returned for plaintiff, defendant is entitled to have the verdict set aside and to have a new trial unless it conclusively appears as a matter of law that plaintiff was entitled to the verdict upon other grounds.

We cannot agree with defendant's contention that the statute in question refers only to adults and does not apply where the number exceeding three includes children. It is our view that the plain wording of the statute, particularly as applied to children of 7 and 8 years of age, permits no such distinction. We are, therefore, of the view that children 7 and 8 years of age are persons within the purview of § 169.37, which prohibits the presence of more than three persons in

---

[1]M. S. A. 169.37. "No person shall drive a vehicle when it is so loaded, or when there are in the front seat such number of persons, exceeding three, as to obstruct the view of the driver to the front or sides of the vehicle or as to interfere with the driver's control over the driving mechanism of the vehicle.

"No passenger in a vehicle or street car shall ride in such position as to interfere with the driver's or motorman's view ahead or to the sides, or to interfere with his control over the driving mechanism of the vehicle or street car."

the front seat of a vehicle where such presence obstructs the front or side view of the driver or interferes with the driver's control over the driving mechanism.

█ The only question left for us to determine with reference to this particular objection is whether or not there was sufficient evidence in the record to indicate that the presence of more than three persons in the front seat interfered with the control or operation of the vehicle as contemplated by the statute. Section 169.37 clearly provides that it has application only when the presence of more than three persons in the front seat of a cab interferes with the driver's view or control over the driving mechanism.

These conditions limiting the application of the statute are clearly set forth in the statute itself and require no amplification by the court. As to the propriety of submitting the statute to the jury, it should be observed that, while the evidence as to the effect of overcrowding on the operation of the truck is not clear-cut, the record contains evidence from which the jury could find that the overcrowded condition of the cab interfered with the operation of the truck. The cab was 48 inches in width. When it stopped at the intersection of Highway No. 10 it was necessary for Mrs. Kutzler to open the door and stand on the running board to have a view to the north. This maneuver necessitated changing positions of at least two of the occupants of the cab, since one of the boys was sitting on Mrs. Kutzler's lap. After the truck had entered Highway No. 10 and proceeded south, there is testimony that Mrs. Kutzler was having difficulty in closing the door of the cab. In the process of readjusting the positions of the occupants and the closing of the door, circumstances existed from which the jury could infer that defendant either slowed down the speed of the truck or stopped it for the purpose of closing the door. We are satisfied that these conditions created circumstances which would interfere with the operation of the truck.

It should further be observed that no objection was made to the instruction at the time it was given, even though the court invited suggestions from counsel. We have held that, where the only basis for claiming error is that the instruction complained of, although a correct statement of the law, was not applicable to the facts, it presents no

ground for reversal. Donovan v. Ogston, 239 Minn. 553, 59 N. W. (2d) 672; Chapman v. Dorsey, 235 Minn. 25, 49 N. W. (2d) 4; Greene v. Mathiowetz, 212 Minn. 171, 3 N. W. (2d) 97.

■ With reference to the further assignment that it was error for the court in its instructions to read to the jury § 169.15, the so-called slow-speed statute, it should be further observed that here again no exception was taken at the trial and the observations made in the foregoing paragraph apply. Moreover, there was sufficient evidence from the testimony of the plaintiff and the witness Cincoski to justify the reading of the statute applicable under circumstances in this case. The situation here is not analogous to the facts in Satter v. Turner, 251 Minn. 1, 12, 86 N. W. (2d) 85, 92, where we said that, if the jury could find from the evidence that the defendant "had been on the highway a sufficient time and distance so that he could have attained a speed which would not have impeded traffic, the prima facie rule would then come into play and he would have to proceed to show some excuse or justification for it." Here the evidence established that the defendant traveled a distance of 750 feet from the intersection to the place where the accident occurred. In that distance the defendant would have had ample time to attain a speed which would not impede traffic and which would permit him to become a part of the normal flow of travel on the highway.

■ The defendant further asserts that it was error for the court to read to the jury § 169.50, subd. 2, with reference to the subject of illumination of rear license plates, which provides as follows:

"Either such rear lamp or separate lamp shall be so constructed and placed as to illuminate with a white light the rear registration plate and render it legible from a distance of 50 feet to the rear. Any rear lamp or rear lamps, together with any separate lamp for illuminating the rear registration plate, shall be so wired as to be lighted whenever the head lamps or auxiliary driving lamps are lighted."

It is apparently the contention of defendant that the purpose of this particular provision is to require the illumination of the license plate and that it is not intended that such light should serve as a warning to cars approaching from the rear. We assume that defendant's theory is

that plaintiff is not one of a class for whose benefit this provision of the statute was enacted and that therefore a violation of it does not give rise to liability upon which he can recover. Mechler v. McMahon, 184 Minn. 476, 239 N. W. 605; LaBelle v. Swanson, 248 Minn. 35, 78 N. W. (2d) 358. We can see no prejudice to the defendant in reading this particular section of the statute to the jury. It is part of § 169.50, which relates generally to the subject of rear lamps required for the protection of other users of the highway. As is apparent from the facts already stated and the observations hereinafter set forth with reference to defendant's failure to comply with the other provisions of the statute, there was sufficient evidence from which the jury could find that the defendant was negligent in not having proper rear lights. In light of the evidence as a whole with reference to this subject, it is our view that the reading of the section of the statute relating to the illumination of the rear license plate was not prejudicial, particularly in view of the fact that the failure of the license-plate light would necessarily have a bearing on the question of whether the other warning lights on the rear of the vehicle were properly functioning. Taking the instructions with reference to the subject of rear warning lights as a whole, we are of the view that there was no prejudicial error on that subject. O'Neill v. Mund, 235 Minn. 112, 49 N. W. (2d) 812; Bohnen v. Gorr, 234 Minn. 71, 47 N. W. (2d) 459; Rampi v. Vevea, 229 Minn. 11, 38 N. W. (2d) 297; Leman v. Standard Oil Co. 246 Minn. 271, 74 N. W. (2d) 513; Cameron v. Evans, 241 Minn. 200, 62 N. W. (2d) 793; Peterson v. Lang, 239 Minn. 319, 58 N. W. (2d) 609.

■ With reference to the various contentions that the court erroneously read inapplicable statutes to the jury, it should be observed that various cautionary instructions were given in connection with the reading of these statutes.[2] The jury was cautioned that it was for them to decide whether or not the particular statutes were applicable, depending upon

---

[2]The court gave the following cautionary instructions:

"I have on other occasions referred to our Highway Traffic Code, which, as I informed you, is made up of regulations enacted by the Legislature of the State of Minnesota to protect all who use our highways. I shall read a number of these sections to you but they may or may not be controlling in this particular case, depending in large measure upon what you decide the

the facts, and that a violation of a statute is of no consequence unless it is a proximate cause of the accident. Of course it was for the trial court to instruct the jury as to the applicable law. What constitutes applicable law depends to some extent upon what the jury finds the facts to be. The trial court is not the trier of fact and need not first determine the facts before instructing the jury. The trial court need only decide what issues exist and then fully and adequately instruct the jury upon such issues.

■ In charging the jury with reference to § 169.50, which deals with the subject of requirements in connection with "rear lamps" on motor vehicles,[3] the trial court in substance told the jury that, unless

---

facts of the case to be from a careful examination and weighing of the evidence.

\* \* \* \* \*

"\* \* \* However, in this connection I must also say that a violation of a statute is of no consequence, that is, it does not count against the person violating it unless it was a proximate cause of the accident \* \* \*.

\* \* \* \* \*

"In considering the question of negligence and contributory negligence you must go farther than merely to find that there was negligence on the part of either party; was such negligence the proximate cause, or did it contribute proximately to cause the accident. If not, as I previously pointed out, it is not affective against such party. The negligence must be the proximate cause, or contribute proximately to cause the accident."

[3]§ 169.50, subd. 1. "Every motor vehicle and every vehicle which is being drawn at the end of a train of vehicles shall be equipped with at least one tail lamp, exhibiting a red light plainly visible from a distance of 500 feet to the rear. On and after January 1, 1938, no person shall sell or operate any new motor vehicle, trailer or semitrailer unless the rear lamp thereon is mounted and located on the rear within 20 inches from the extreme left edge and not less than 20, nor more than 72, inches from the surface upon which the vehicle stands, unless the use or construction of the vehicle makes such location impracticable."

Subd. 3. "On and after January 1, 1938, each new motor vehicle, trailer, or semi-trailer, hereafter sold, and each such vehicle hereafter operated on a highway, shall carry at the rear either as a part of the rear lamp or separately, a reflector. This reflector shall be of a type approved by the commissioner and shall be mounted as close as is practicable to the extreme left edge of the vehicle at a height not more than 60, nor less than 24, inches above the surface upon which the vehicle stands. Each such reflector shall

the evidence showed an excuse or justification for the violation, the defendant was negligent as a matter of law. The evidence clearly discloses that both sections of the statute were violated, as neither the taillight nor the reflectors were properly mounted as required by the statute. Where no evidence justifies the violation, such negligence is negligence as a matter of law. Wojtowicz v. Belden, 211 Minn. 461, 1 N. W. (2d) 409; Tschida v. Dorle, 235 Minn. 461, 51 N. W. (2d) 561; Borris v. Cox, 245 Minn. 515, 73 N. W. (2d) 372.

■ The defendant also contends that the trial court erred in charging the jury with the emergency doctrine. That doctrine, correctly stated, is that "one, suddenly confronted by a peril, through no fault of his own, who in the attempt to escape does not choose the best or safest way, should not be held negligent because of such choice unless it was so hazardous that the ordinarily prudent person would not have made it under similar conditions." Johnson v. Townsend, 195 Minn. 107, 110, 261 N. W. 859, 861. However, the rule does not apply unless it is first determined that there existed a real peril to which the party seeking the protection of the emergency doctrine did not contribute in whole or in part by his own negligence. Nicholas v. Minnesota Milk Co. 212 Minn. 333, 4 N. W. (2d) 84; Naylor v. McDonald, 185 Minn. 518, 241 N. W. 674; Anderson v. Gray, 206 Minn. 367, 288 N. W. 704.

In essence defendant's contention is that as a matter of law plaintiff was guilty of contributory negligence and therefore not entitled to the protection of the emergency doctrine. Since the record discloses ample evidence upon which reasonable men might differ with respect to the question of whether plaintiff was negligent, the question of contributory negligence was for the jury. On the issue of emergency there was evidence from which the jury could find that the defendant's truck at the time of the collision was stopped on the highway without the rear lights required by the statute. Although the evidence is contradictory on the point, there was testimony from the witness Cincoski to the effect that

be so designed and maintained as to be visible at night from all distances within 300 to 50 feet from the vehicle, except that on a commercial vehicle the reflector shall be visible from all distances within 500 to 50 feet from the vehicle, when directly in front of a motor vehicle displaying lawfully lighted head lamps."

the truck was either stopped on the highway or barely moving. Moreover, the highway patrol officers said the vehicles were approximately 1 foot apart after the accident. All of the witnesses who observed the truck after the accident said they noted only one dimly burning clearance light on the left rear corner of the truck's platform. Purportedly there were no other clearance lights or taillights burning. In the absence of any evidence explaining how all of the lights but one would go out after the accident,[4] the jury could have reasonably found that the rear of the truck was improperly lighted. There is no dispute that the taillight was mounted on the left rear frame in such a position as to be concealed by the left rear turn signal.

■ The defendant asserts that plaintiff was overdriving his headlights and was therefore contributorily negligent as a matter of law, citing Orrvar v. Morgan, 189 Minn. 306, 249 N. W. 42. We have held on numerous occasions that the Orrvar case has been distinguished so many times that it is no longer authority except on its particular facts. See, Jurgensen v. Schirmer Transp. Co. 242 Minn. 157, 64 N. W. (2d) 530; Schubitzke v. Minneapolis, St. P. & S. S. M. R. Co. 244 Minn. 156, 69 N. W. (2d) 104; Shastid v. Shue, 247 Minn. 314, 77 N. W. (2d) 273; Faust v. Przybilla, 247 Minn. 420, 77 N. W. (2d) 737.

In Schubitzke v. Minneapolis, St. P. & S. S. M. R. Co. *supra,* this court said (244 Minn. 159, 69 N. W. [2d] 106):

"* * * There has never existed in this state any hard and fast rule that one who drives a motor vehicle at such a rate of speed that he cannot stop within the range of his headlights is negligent as a matter of law."

Where a driver's view is obstructed by atmospheric conditions, such as rain, the rule is not applicable. Tully v. Flour City Coal & Oil Co. 191 Minn. 84, 253 N. W. 22; accord: Morehouse v. City of Everett, 141 Wash. 399, 252 P. 157, 58 A. L. R. 1482. In the Tully case the court distinguishes the Orrvar case on the ground that in the former the weather was "blustery" and "very blizzardy" whereas in the latter the weather was clear. The instant case can be distinguished from the

---

[4]With the exception, of course, of the right rear clearance light, which may have been extinguished by the collision.

Orrvar case on similar grounds in that here it was raining on the night of the accident.

█ At the close of presentation of evidence by both parties defendant moved the court to direct a verdict in his favor upon two grounds: (1) There was no evidence of negligence on the part of defendant; and (2) as a matter of law the plaintiff's contributory negligence was the proximate cause of the accident. This motion was denied as was a subsequent motion by defendant for judgment notwithstanding the verdict or for a new trial. Defendant now assigns the denial of these motions as error.

Rule 50, Rules of Civil Procedure, governs the granting of directed verdicts and judgments notwithstanding the verdict. The last sentence of Rule 50.01 provides:

"* * * If the evidence is sufficient to sustain a verdict for the opponent, the motion shall not be granted."

A motion for a directed verdict presents only a question of law and admits the credibility of the evidence for the adverse party and every inference which may be fairly drawn from such evidence.[5] The evidence in support of the party opposing the motion may be rejected only where it is absolutely impossible, either physically or morally, or is so unreasonable and inconsistent and so opposed by undisputed and independent evidence as to be wholly incredible and unworthy of belief. Hanrahan v. Safway Steel Scaffold Co. 233 Minn. 171, 46 N. W. (2d) 243; Brulla v. Cassady, 206 Minn. 398, 289 N. W. 404; Thompson v. Pioneer-Press Co. 37 Minn. 285, 33 N. W. 856; Kingsley v. Alden, 193 Minn. 503, 259 N. W. 7. As pointed out in Hanson v. Homeland Ins. Co. 232 Minn. 403, 45 N. W. (2d) 637, the test does not require a consideration of only that part of the evidence which is favorable to a contrary verdict but rather a consideration of the evidence as a whole. In that case the court said (232 Minn. 405, 45 N. W. [2d] 638):

---

[5]19 Dunnell, Dig. (3 ed.) § 9764; Hanson v. Homeland Ins. Co. 232 Minn. 403, 45 N. W. (2d) 637; Woodrow v. Chicago, M. St. P. & P. R. Co. 239 Minn. 530, 60 N. W. (2d) 49; Ryan v. Griffin, 241 Minn. 91, 62 N. W. (2d) 504; Yeager v. Chapman, 233 Minn. 1, 45 N. W. (2d) 776, 22 A. L. R. (2d) 1260.

"* * * if the evidence *as a whole* so overwhelmingly preponderates in favor of a party as to leave no doubt as to the factual truth, he is entitled to a directed verdict as a matter of law, even though there is some evidence *which, if standing alone,* would justify a verdict to the contrary."[6]

Accordingly, a verdict may be directed only in those unequivocal cases where it clearly appears to the court on the trial that it would be its manifest duty to set aside a contrary verdict as not justified by the evidence or as contrary to the law applicable to the case. Kolatz v. Kelly, 244 Minn. 163, 69 N. W. (2d) 649; White v. Maurice L. Rothschild & Co. 216 Minn. 87, 11 N. W. (2d) 773; Porter v. Grennan Bakeries, Inc. 219 Minn. 14, 16 N. W. (2d) 906; Olson v. Evert, 224 Minn. 528, 28 N. W. (2d) 753; Crea v. Wuellner, 235 Minn. 408, 51 N. W. (2d) 283; Village of Plummer v. Anchor Cas. Co. 240 Minn. 355, 61 N. W. (2d) 225. If in viewing the evidence as a whole in the light most favorable to the plaintiff reasonable men could differ as to the conclusions to be drawn from it, the defendant's motion for a directed verdict should have been denied. Brady v. Kroll, 244 Minn. 525, 70 N. W. (2d) 354. It is only in those cases where the facts are undisputed and it is evident that reasonable men could draw but one conclusion from them that the question for determination becomes one of law for the court. Kedrowski v. Czech, 244 Minn. 111, 69 N. W. (2d) 337; Mechler v. McMahon, 180 Minn. 252, 230 N. W. 776. Where reasonable men might draw different inferences or conclusions from the facts, the matter in issue must be submitted to the jury. Teas v. Minneapolis St. Ry. Co. 244 Minn. 427, 70 N. W. (2d) 358.

Certainly this case is not a case in which the facts are undisputed nor is it plain that reasonable men could draw but one conclusion from the evidence. A reading of the record satisfies us that reasonable men might differ, particularly with respect to the question whether or not the truck was stopped on the highway or barely moving and whether the rear clearance lights and taillight were burning at the time of the collision.

---

[6]See, also, Kundiger v. Prudential Ins. Co. 219 Minn. 25, 17 N. W. (2d) 49; Applequist v. Oliver Iron Min. Co. 209 Minn. 230, 296 N. W. 13.

■ Included in the court's charge was an instruction that the jury was not to consider the question of whether or not plaintiff's operation of his automobile had been affected by the consumption of intoxicants because there was not evidence so indicating. Defendant assigns the giving of this instruction as error. It was developed on cross-examination that the plaintiff had consumed three bottles of beer during the day. One bottle of strong beer had been drunk during the morning, a bottle of 3.2 beer in the early afternoon, and a second bottle of strong beer at about 6:30 p. m. on the evening of the accident. The plaintiff testified that the beer did not affect him. One of the highway patrolmen and the doctor who attended the plaintiff both testified that they did not detect any evidence that plaintiff had an odor of alcohol about him nor that he was under the influence of intoxicants. Under the circumstances we do not think the court abused its discretion in removing from consideration by the jury the question of intoxication. To have allowed the jury to consider this subject would have permitted it to indulge in speculation and conjecture.

Affirmed.