## OSCAR A. RONNINGEN v. GENE LOUIS SONTERRE.

143 N. W. (2d) 53.

May 13, 1966—No. 39,728.

*Rider, Bennett, Egan & Johnson, William T. Egan,* and *David F. Fitzgerald,* for appellant.

*Robins, Davis & Lyons, Paul W. Urbanek,* and *Dale I. Larson,* for respondent.

SHERAN, JUSTICE.

Appeal from an order of the district court granting a new trial because of errors of law.

Action was instituted by Oscar A. Ronningen to recover damages for personal injuries. The accident occurred on Friday, January 18, 1963, at the intersection of Fourth Avenue and Main Street in Anoka, shortly after 6 p. m. It was dark, but there was some artificial illumination provided at the intersection by lamps located on each corner.

Main Street is a principal thoroughfare running east and west on a level grade through the city. At the intersection with Fourth Avenue it is merged with Highway No. 10 and is protected by stop signs. The property abutting either side of Main Street near this intersection is developed, containing primarily commercial establishments. The relevant speed limit is 30 miles per hour. The eastbound and westbound lanes of Main Street are separated by a concrete divider. The westbound lane, 34 feet wide, accommodates two lanes of moving traffic with space for parked vehicles at the north curb. Fourth Avenue is 44 feet wide. About 500 feet to the east of this intersection Fifth Avenue crosses Main Street. The weather was clear. The pavement was described as "frosty," but the record is confusing as to the sense in which this word was used.

Defendant, 19 years of age and single, resided with his parents near Anoka. He owned a 1961 Plymouth automobile in good mechanical condition. Driving alone and westerly on Main, he stopped at Fifth Avenue for a red semaphore signal. He was in the lane closest to the center divider. When the light changed he proceeded again toward Fourth Avenue. There was a tractor-trailer unit about halfway between Fifth Avenue and Fourth Avenue, also proceeding westerly but in the lane to the right of that used by defendant. Defendant's testimony with respect to this truck is not altogether consistent. Considering all of it, the jury could have found that, driving at a speed variously estimated at 20 to 30 miles per hour, defendant closed the gap which separated his car from the tractor-trailer unit so that when he came to a point near the east crosswalk of Fourth Avenue, the front of defendant's car was about even with the rear wheels of the other vehicle. As the front of the tractor-trailer unit was entering the intersection, defendant heard an exhaust sound indicating that the truckdriver was "letting up," i. e., taking his foot from the accelerator to slow down. Defendant did not decrease his speed as he approached the intersection.

Meanwhile, plaintiff, a 66-year-old Anoka resident, had parked his car north of Main Street on Fourth Avenue and walked to the intersection on the west side of that street. It was his intention to cross Main Street to a grocery store located on the southwest corner of the intersection. His clothing was generally dark in color. Walking at an "ordinary gait," he proceeded, apparently within the crosswalk, from the northwest corner of the intersection to a point just short of the center island. There he was hit.

Defendant saw plaintiff walk from in front of the tractor-trailer unit in a southerly direction. He applied his brakes, but did not turn either to the left or to the right. His car skidded a distance of 42 feet and came to rest with its front end in the west crosswalk. A dent located about in the middle of the hood of defendant's car appeared to indicate the point on the vehicle where plaintiff was struck.

Plaintiff testified that just before he started walking across the intersection he looked twice to his left and saw headlights of vehicles that appeared to be about a block away. After he started walking across the street, he did not look to his left again, but instead directed his attention to the right. At the time he was struck, plaintiff was facing away from the defendant's vehicle.

The trial judge in instructing the jury included these statements:

"Now, the defendant claims among his other defenses that this accident was an unavoidable accident. In law we recognize what is termed as unavoidable or inevitable accident. These terms do not mean literally that it was not possible for such an accident to be avoided. They simply denote an accident that occurred without having been directly and proximately caused by negligence. Even if such accident could have been avoided by the exercise of exceptional foresight, skill, or caution, still they may be held liable for the injuries from it. Defendant having asserted this defense, the burden of proof falls upon the defendant to prove it. You, the jury, will determine whether or not this was an unavoidable accident.

\* \* \* \* \*

"Subdivision 3 of [Minn. St. 169.14] in regard to reduced speed reads in part: the driver of any vehicle shall consistent with the requirements

drive at an appropriate reduced speed when approaching and crossing an intersection and when special hazards exist with respect to pedestrians or other traffic or by reason of weather or highway conditions. However, in that connection with that statute, an automobile need not reduce its speed on a through highway protected by stop signs when crossing intersections along said through highway where no special hazards exist."

At the close of the instructions, the court inquired of counsel as to whether there were any corrections, omissions, or alterations. Counsel for plaintiff replied that he had none to suggest. After the jury returned a verdict for defendant, plaintiff moved for judgment notwithstanding the verdict or for a new trial upon the grounds, in part, that the above-noted instructions were prejudicially erroneous. An order granting a new trial followed and this appeal was taken.

Defendant contends that the trial court erred in granting a new trial because the instructions as given were not erroneous and, in any event, error was waived under Rule 51 of Rules of Civil Procedure [1] by the failure of plaintiff's counsel to object to them. Defendant also contends that plaintiff was contributorily negligent as a matter of law.

Plaintiff, in support of the trial court's order, argues (1) that the instruction qualifying the application of § 169.14, subd. 3, was erroneous because (a) the qualification does not apply to an urban intersection and (b) it had the effect of relieving defendant from his obligation to maintain a reasonable lookout to determine if special hazards did exist at the intersection; (2) that the instruction on unavoidable accident was erroneous because of the absence of evidence that any third agency was involved in the accident; and (3) that the trial court's determination that these errors in instructions, when viewed in combination, constituted er-

---

[1] Rule 51, Rules of Civil Procedure, provides in part: "No party may assign as error unintentional misstatements and verbal errors, or omissions in the charge, unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objections. An error in the instructions with respect to fundamental law or controlling principle may be assigned in a motion for a new trial though it was not otherwise called to the attention of the court."

rors with respect to fundamental law or controlling principle under Rule 51 was not an abuse of discretion.

1. As a threshold question we consider the appealability of the order appealed from. The order states that a new trial is granted "because of errors of law committed by the Court." Under the statute in effect at the time the notice of appeal was filed, Minn. St. 605.09, as amended by L. 1963, c. 806, § 8, an appeal as of right could be taken "(d) * * * from an order granting a new trial if the court expressly states therein, or in a memorandum attached thereto, that the order is based *exclusively* upon errors of law occurring at the trial, and upon no other ground; * * *." (Italics supplied.) While the order does not use the precise terms of the statute, and while we have held that the appealability of such an order should be reviewed with care when the precise statutory language is not used,[2] we are satisfied from a review of the order, and of the memorandum made a part thereof, that it was based solely upon the grounds that it was prejudicially erroneous to give the two instructions noted above. Therefore, the order is appealable as of right. Weatherhead v. Burau, 237 Minn. 325, 54 N. W. (2d) 570.

2. The instruction qualifying the applicability of Minn. St. 169.14, subd. 3,[3] was drawn from a line of cases commencing with Neal v. Neal, 238 Minn. 292, 56 N. W. (2d) 673. In that case we determined that it would be unreasonable and impractical to apply subd. 3 literally to a driver who was traveling at a speed that is prima facie lawful under § 169.14, subd. 2,[4] on an arterial highway protected by stop signs, thus re-

---

[2] See, Von Bank v. Mayer, 239 Minn. 492, 59 N. W. (2d) 307; Noren v. Hankee, 241 Minn. 379, 63 N. W. (2d) 43; Kubinski v. Speckman, 261 Minn. 475, 113 N. W. (2d) 173; Kelsey v. Chicago, R. I. & P. R. Co. 262 Minn. 219, 114 N. W. (2d) 90.

[3] Minn. St. 169.14, subd. 3, provides: "The driver of any vehicle shall, consistent with the requirements, drive at an appropriate reduced speed when approaching and crossing an intersection * * *, and when special hazards exist with respect to pedestrians or other traffic or by reason of weather or highway conditions."

[4] Minn. St. 169.14, subd. 2, as amended by L. 1963, c. 843, § 1, provides in part:

quiring him to drive at an appropriately reduced speed solely because of the presence of an intersection even though none of the other factors enumerated in subd. 3 was present. As a result, we held that it was error in such a case to instruct the jury on the reduced-speed statute without proper qualification.

The setting of the Neal case, as of several of the subsequent cases in that line, was a rural intersection. However, none of our decisions indicate, as plaintiff argues, that the need for the qualification is not present when an urban intersection is involved. In Adelmann v. Elk River Lbr. Co. 242 Minn. 388, 65 N. W. (2d) 661, the intersection was an urban one. We see no reason to distinguish between rural and urban intersections for the purpose of this instruction and hold that the trial court properly qualified the application of the reduced-speed statute.

We find no error in the form of the qualifying instruction. The instruction preserves the defendant's duty to reduce his speed if special hazards existed and leaves to the jury the question of whether, under the evidence, such hazards did exist. We do not agree with the plaintiff's contention that the form of the instruction had the effect of relieving the defendant of the duty to use reasonable care to determine if a special hazard did exist. The qualifying language itself does not import this meaning and it was followed by a later instruction using this language:

"There is also the common law duty of every operator of a motor vehicle upon the highways of this state to keep his motor vehicle under reasonable control, *to keep a reasonable lookout,* and to exercise due care to avoid danger or dangerous circumstances of which he has become aware of *or of which in the exercise of due care he should have reason to become aware of.*" (Italics supplied.)

3. It was perhaps inappropriate to instruct on unavoidable accident in this case. In a few jurisdictions, instructions on unavoidable accident

"Where no special hazard exists the following speeds shall be lawful, * * *:

"(1) 30 miles per hour in an urban district;

"(2) 65 miles per hour in other locations during the daytime;

"(3) 55 miles per hour in such other locations during the nighttime."

are now disapproved in all cases.[5] Our cases have indicated that the concept has a very restricted application,[6] and that it should be limited to cases where there is some evidence of causation by an act of God or acts chargeable to an unknown agency.[7] We have also held that the failure to give such an instruction, even where it might have been appropriate under the facts, is not reversible error where the jury is fully instructed on negligence, proximate cause, and burden of proof.[8]

On the other hand, we have said that the instruction on unavoidable accident is common; is almost a part of the definition of negligence; and is error without prejudice when inappropriately given.[9]

4. Upon review of the instructions as a whole, we find that they clearly and fairly present the law applicable to the facts of this case. Whatever defects might be present in regard to those portions of the instructions specifically discussed above did not amount to errors of fundamental law or controlling principle. Thus they were waived by the failure of plaintiff's counsel to object to the instructions as given at the appropriate time and cannot be assigned as error under Rule 51. Leman v. Standard Oil Co. 246 Minn. 271, 74 N. W. (2d) 513; Mottinger v. Halfman, 247 Minn. 115, 76 N. W. (2d) 689. Mingo v. Extrand, 180 Minn. 395, 230 N. W. 895, does not require a different result since the trial court's determination here on the motion for a new trial was erroneous. We, therefore, reverse with directions that the verdict be reinstated.

This disposition obviates the necessity of considering the claim that plaintiff was contributorily negligent as a matter of law.

Reversed.

---

[5] See cases collected in Annotation, 65 A. L. R. (2d) 12, and particularly Butigan v. Yellow Cab Co. 49 Cal. (2d) 652, 320 P. (2d) 500, 65 A. L. R. (2d) 1.

[6] See, Lestico v. Kuehner, 204 Minn. 125, 283 N. W. 122.

[7] See, Rahja v. Current, 264 Minn. 465, 119 N. W. (2d) 699.

[8] See, Botz v. Krips, 267 Minn. 362, 126 N. W. (2d) 446.

[9] See, Daly v. Springer, 244 Minn. 108, 69 N. W. (2d) 98.